725 P.2d 1228
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Ricky STALLINGS,
Defendant-Appellant.**

No. 8990.

Court of Appeals of New Mexico.

Aug. 26, 1986.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

MINZNER, Judge.

Convicted of five counts of forgery, contrary to NMSA 1978, Section 30–16–10 (Repl.Pamp.1984), defendant appeals. He raises two issues: (1) whether the trial court's questions deprived him of a fair and impartial trial, and (2) whether there was sufficient evidence to support the convictions. We affirm.

### Background

At trial, the state sought to prove that defendant cashed five checks knowing they were forged. *See* § 30–16–10(B). The five checks were drawn on an Altus, Oklahoma, bank account in the name of Randy Thacker. Defendant cashed the checks at the Thrifty Market in Farmington, where he had worked as a teenager and at which he had cashed other checks. The other checks had been payroll or commission checks.

The Randy Thacker on whose account the checks were drawn testified at trial that he did not know defendant and that his checks had been stolen while he lived in Farmington. Defendant admitted cashing the checks, but denied knowing that they had been forged. He testified that he had received the checks from a man he knew as Randy Thacker, in exchange for several items of personal property and in payment for expenses on a trip to Iowa. He also testified that the person who had given him the checks was someone other than the Randy Thacker who testified for the state.

After defendant testified on his own behalf, and after the prosecutor had cross-examined, the trial court asked defendant a number of questions. During the questioning, defendant objected, stating that the questions to that point had already been asked and answered and that the questions were going "beyond the bounds of inquiry that hadn't already been covered" by the state. The trial court observed that no one had given the address in Iowa to which defendant and his friend had gone, asked about that address, and asked about each of the five checks.

The initial exchange of questions and answers occurred as follows:

The Court: Mr. Stallings, this Randy Thacker that you said that you knew, how long have you known him?

Defendant: About three months. I met him around the end of May.

The Court: And where did you meet him?

Defendant: At the pool hall. Snooker's 8 Pool Hall. In Farmington.

The Court: Where did he live?

Defendant: He was staying at the Oasis Motel. He was from Clearlake, Iowa.

The Court: He was staying where?

Defendant: At the Oasis Motel.

The Court: Oasis Motel?

Defendant: I guess it was.

The Court: At what periods of time did he stay there?

Defendant: Around May and June.

The Court: 1984. He was from Clearlake, Iowa?

Defendant: Yes, as far as I know.

The Court: What kind of work did he do?

Defendant: I have no idea.

The Court: You had five transactions with him between June 22nd and July 8th and you were not aware of his employment?

Defendant: No. I think he does construction work, but I wasn't really sure about it.

The Court: Were you curious about a check which showed him to have a bank account in Altus, Oklahoma?

Defendant: No, I don't know if he has one or not, if that's what you're asking.

The Court: And you never questioned him about why he had a bank account in Altus, okay?

Defendant: No, I haven't.

The Court: And you went back to Clearlake, Iowa. How long were you there?

Defendant: We stayed in Clearlake, Iowa about a day. We were gone about three days altogether. We spent one night at Omaha, Nebraska.

The Court: Where did you go in Clearlake, Iowa?

Defendant: To his apartment.

The Court: And where was that?

Defendant: I dropped him off at his apartment so he could get all his stuff packed up.

The Court: Where was that?

At this point, defense counsel objected, stating that these questions had been asked and answered during cross-examina-

tion. The second exchange of questions and answers then occurred as follows:

> The Court: No one has given the address as to where he went. What was the address? Where was that?
>
> Defendant: I have no idea what the address is. But, I know where it is. What it looks like.
>
> The Court: And the first check that you gave him, what was that for, or that you received from him, what was that for?
>
> Defendant: Well, I think it was for the martial arts, the first check I received.
>
> The Court: And the second check?
>
> Defendant: That was for the AM/FM cassette stereo.... I also sold him other parts of stereo equipment.
>
> The Court: And what was the third check for?
>
> Defendant: I believe that one was for the stereo and it has a turntable, cassette player, and receiver.
>
> The Court: And how does that differ from the second check?
>
> Defendant: One of them is a portable and the other one is a house stereo.
>
> The Court: And the fourth check?
>
> Defendant: I can't remember.
>
> The Court: And the fifth check?
>
> Defendant: The fifth check was the one I believe for the trip to Iowa. If that's the $310 one. The one for $310 is the one for the trip to Iowa.
>
> The Court: I don't have any other questions. Does anyone else have any questions based on the questions I asked?

Neither counsel asked any further questions, and the defense rested. The state called a rebuttal witness. Defendant again took the stand, and then the trial ended. In closing argument, the prosecutor relied on some of defendant's answers to the trial court's questions.

After the verdicts were entered, defendant moved the court to recuse itself in sentencing. The motion was based on a perception of bias, based on past appearances as a juvenile before the trial judge, as well as the trial court's questions during this trial. The motion was granted, and another judge sentenced defendant.

### 1. *The Trial Court's Questions*

NMSA 1978, Evid.Rule 614(b) (Repl. Pamp.1983) authorizes the trial court to question a witness. There is no express exception as to a defendant in a criminal case; however, in all cases, the questions asked must be guarded, so as not to constitute an implied comment. *Id.* In a criminal case in which defendant's credibility is particularly important to his defense, maintaining an aura of judicial impartiality is especially critical. *State v. Caputo,* 94 N.M. 190, 608 P.2d 166 (Ct.App.1980).

Relying on *State v. Caputo,* defendant contends that the court's questioning was not proper because it asked for details relevant only to credibility, because some of the questions had been asked and answered on direct, because others in themselves expressed disbelief, and because the questioning was extensive. Defendant does not contend that any of the questions asked by the trial court was irrelevant. Rather, defendant contends that the court's questions conveyed to the jury that the court did not believe defendant's explanation of how he received the five checks that were the basis of the charges. The state contends that the court's questions were not improper because they tended to clarify the evidence and indicated no bias.

Because the questions were relevant, we are not persuaded that *State v. Caputo* requires reversal. In that case, this court noted that the questions asked by the trial court were irrelevant and that the jury had not been instructed on how to identify or evaluate such an exchange. In this case, there had been an instruction on the situation that arose. *See* NMSA 1978, UJI Crim. 1.00 (Cum.Supp.1985). Under these circumstances, the standard to be applied is found in *State v. Crump,* 97 N.M. 177, 637 P.2d 1232 (1981). There, the supreme court noted that a trial judge may insist that all facts be presented to insure a fair trial but may not show bias or protract its own

questioning. The standard to be applied is abuse of discretion. We examine the questions in light of this standard. The questions fall roughly into three groups: questions concerning defendant's relationship with the person he knew as Randy Thacker; questions that defendant claims show the trial court's disbelief; and questions asked after defendant objected.

■ Although the trial court asked some questions that had been asked and answered on direct, he asked others that had not. Consequently, the first group of questions have a different pattern than that developed on direct. Because some of the questions had not been asked on cross, the record supports a conclusion that the trial court was clarifying when and how long defendant had known the person he claimed was Randy Thacker. This was not inappropriate.

■ With respect to the next group of questions, defendant has suggested that they include several that indicate disbelief. Having reviewed the testimony on direct and cross, as well as the trial court's questions, we disagree with defendant's characterization. We have, on the basis of the tape-recorded transcripts, an indication of tone. *See State v. Martin*, 101 N.M. 595, 686 P.2d 937 (1984). The trial court's questions are gently put, in a neutral tone. Defendant had, on cross, indicated he did not know what the particular notations on the checks meant. Then, on probing, he answered and said he had asked that the notations be placed on the checks. In addition, his answers on cross and during the trial court's questioning were not always responsive. The questions at issue seem, in context, to be providing defendant an additional opportunity to respond or indicating that the previous answer was not responsive. In any event, as to this group of questions, we will assume the jury followed the court's instruction based on UJI Crim. 1.00.

■ Defendant makes no specific objection to those questions the trial court asked after the objection. Rather, defendant relies on the fact that these questions extended the trial court's participation. The number of questions, however, is not dispositive. *See Vigil v. Johnson*, 60 N.M. 273, 291 P.2d 312 (1955).

The state's argument that the trial court simply clarified the evidence and indicated no bias would be even more persuasive if the trial court had not repeated some of its own questions as well as those asked on direct and cross. Nevertheless, because defendant's answers were not always responsive, the repetition does not, in our opinion, demonstrate bias.

We hold the trial court did not abuse its discretion. The questions asked prior to defendant's objection tended to clarify what had preceded; after the objection, the trial court asked very carefully guarded questions. The jury was instructed with respect to the court's questions. We conclude defendant received a fair trial. *See Vigil v. Johnson.*

### 2. *Sufficiency of the Evidence*

■ The state elicited circumstantial evidence of defendant's knowledge that the checks were forged. The evidence included his failure to make arrangements to pay the market after being advised the checks had not been honored and his prior felony conviction. In addition, defendant admitted requesting false notations on the checks, which indicated they were given him by employers with whom the market was familiar, and that he did so in order to make the checks easier to cash.

This evidence was sufficient to support an inference that defendant knew the checks were forged. *See State v. Johnson*, 91 N.M. 148, 571 P.2d 415 (Ct.App.1977). The question of knowledge is the only issue on appeal. We conclude that the evidence was sufficient to support the convictions.

### *Conclusion*

The convictions are affirmed.

IT IS SO ORDERED.

BIVINS and GARCIA, JJ., concur.