Ricky G. STALLINGS, Petitioner–
Appellant,

v.

Robert J. TANSY, Warden,
Respondent–Appellee.

No. 93–2100.

United States Court of Appeals,
Tenth Circuit.

June 1, 1994.

Juan A. Gonzalez, Albuquerque, NM, for petitioner-appellant.

Tom Udall, Atty. Gen., Patricia Gandert, Asst. Atty. Gen., Santa Fe, NM, for respondent-appellee.

Before BRORBY and EBEL, Circuit Judges, and KANE,* District Judge.

EBEL, Circuit Judge.

Petitioner, who was convicted on five counts of passing forged checks in violation of N.M.Stat.Ann. § 30–16–10(B), seeks habeas relief pursuant to 28 U.S.C. § 2254 on the grounds that the trial court's examination of petitioner at trial deprived him of a fair trial and that insufficient evidence was adduced at trial to support petitioner's convictions. Petitioner raised both of these issues on direct appeal to the New Mexico Court of Appeals, which affirmed his convictions. *State v. Stallings,* 104 N.M. 660, 663, 725 P.2d 1228, 1228, 1231 (Ct.App.), *cert. denied,* 104 N.M. 632, 725 P.2d 832 (1986) (table). Petitioner then presented the same issues to the district court, which denied petitioner habeas relief and dismissed his petition with prejudice. After a careful review of the state court record, we conclude that the evidence was not sufficient to support a finding of all the essential elements of the forgery charges and, therefore, we reverse.[1]

The evidence clearly established that petitioner passed five forged checks made payable to him. Petitioner argued, however, that he did not know the checks were forged at the time he cashed them. Petitioner contended that the person who wrote the checks

---

* Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

represented himself to be the named owner of the account and petitioner had seen the person's identification, which confirmed his representation. Petitioner maintained that he received the checks in payment for goods he sold and services he provided to the maker of the checks and that he negotiated the checks quite openly at a grocery store where he was well known.

The critical issue in this case, then, is whether the evidence established that petitioner knew the checks were forged when he cashed them. On that issue, the record is devoid of any evidence. Because petitioner's knowledge was an essential element of the State's case, see N.M.Stat.Ann. § 30–16–10(B) (defining forgery as "knowingly issuing or transferring a forged writing with intent to injure or defraud"), we must conclude that the forgery convictions violated petitioner's due process rights. Having reached this conclusion, we need not consider whether the trial court's examination of petitioner also denied him a fair trial.

■ Whether the evidence was sufficient to sustain petitioner's conviction is a question of law that we review de novo. *Kelly v. Roberts*, 998 F.2d 802, 807 (10th Cir.1993); *Tapia v. Tansy*, 926 F.2d 1554, 1562 (10th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 115, 116 L.Ed.2d 84 (1991). In conducting our review, we must view the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "[W]e may not weigh conflicting evidence or consider the credibility of witnesses. Instead, we must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Kelly*, 998 F.2d at 808 (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir.1993)).

■ In its case-in-chief, the State adduced evidence that petitioner cashed each of the third-party checks, which were drawn on an Oklahoma bank account in the name of Randy Thacker, at a grocery store in Farmington, New Mexico, during late June and early July of 1984. The owner of the account testified that he discovered his checkbook

was missing from his Farmington apartment in July 1984, that he did not write any of the five checks at issue, and that he had never met petitioner. The evidence established that petitioner was well known at the grocery store, that he presented proper identification when cashing the checks at issue, and that he had cashed third-party checks there in the past. Finally, the State adduced evidence that all of the checks petitioner negotiated were returned to the store unpaid and marked "forgery." When Jack Morrison, the store owner, told petitioner that one of the checks was returned unpaid, petitioner replied that he did not have any money to make good on the check.

At the conclusion of the State's case, petitioner moved for a judgment of acquittal, arguing that the State had produced no evidence to show that he either knew the checks were forged or intended to injure or defraud the grocery store when he cashed them. The State argued that petitioner's knowledge and intent were established by his statement to Morrison that he did not have the money to make good on the returned check. The trial court denied petitioner's motion without comment. In so ruling, the trial court erred.

We must bear in mind that petitioner was not charged with forging the checks himself and there was no evidence to suggest that he had. In addition, these were third-party checks, *i.e.*, the checks were not drawn on an account that petitioner represented to be his own. Under these circumstances, the jury could not logically infer from petitioner's statement, that he did not have the money to make good on the check, that petitioner knew at the time he negotiated any of the checks that they were forged. Petitioner was in the same position as someone who innocently negotiates a third-party check that turns out not to be backed by sufficient funds; the person negotiating the check may or may not have sufficient funds of his own to make good on the check. Thus, the State presented no evidence in its case-in-chief on one of the essential elements of the crime: that petitioner knew the checks were forged when he passed them.[2]

2. Petitioner argues that the State failed to prove two essential elements: (1) his knowledge that

After the trial court denied petitioner's motion for judgment of acquittal, petitioner took the stand and testified in his defense. Petitioner thereby waived any claim he had based on the insufficiency of the State's evidence at the conclusion of its case-in-chief. *See United States v. Hack,* 782 F.2d 862, 868 (10th Cir.), *cert. denied,* 476 U.S. 1184, 106 S.Ct. 2921, 91 L.Ed.2d 549 (1986); *United States v. Foster,* 783 F.2d 1082, 1085 and n. 1 (D.C.Cir.1986) (in banc) (citing other circuit cases in accord). Our review of petitioner's sufficiency claim, therefore, must take into account not only the evidence adduced during the State's case-in-chief, but also the evidence adduced by the defendant in his case and the rebuttal evidence.

We turn, then, to the evidence presented after the State rested. Petitioner admitted at the outset of his testimony that he had a prior felony conviction for attempted burglary and motorcycle theft. Petitioner then explained how he came to be in possession of the forged checks. In May 1984, petitioner became acquainted with a person who said his name was Randy Thacker, and with whom petitioner shared an interest in cars. Over the course of the summer, the two became friends and petitioner sold Thacker a number of personal items, including stereo and martial arts equipment, for which Thacker paid with the checks at issue. Thacker also gave petitioner a check for the expenses petitioner incurred when he drove Thacker to Iowa. Petitioner said he had no reason to believe the person with whom he was dealing was not Randy Thacker, because he had seen Thacker's identification. Petitioner did admit that, to assist him in cashing the checks at the grocery store, he asked Thacker to make notations in the memo sections of some of the checks indicating that petitioner received the checks in the course of his employment. Petitioner explained that he frequently received checks in connection with his employment and cashed them at the grocery store because he did not have a checking

account at a bank. Petitioner presented no other witnesses in his defense.

On rebuttal, Morrison testified that sometime after the bank returned the checks unpaid, he told petitioner he did not get paid on one of them. Petitioner replied that he did not know why the check would have been returned, and, as far as he knew, the check was good. Petitioner told Morrison that he had only $400.00 in his savings account to pay on the check, which Morrison said was not enough. Petitioner did not pay Morrison any money on the checks.

At the close of all the evidence, petitioner moved again for a judgment of acquittal, arguing that the evidence did not establish that he knew any of the checks were forged at the time he cashed them or that he acted with intent to injure or defraud the grocery store. The trial court denied petitioner's motion and sent the case to the jury, which convicted petitioner on all five counts of forgery.

"To be sufficient, the evidence supporting [a] conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy,* 903 F.2d 1321, 1332 (10th Cir.), *cert. denied,* 498 U.S. 904, 111 S.Ct. 269, 112 L.Ed.2d 225 (1990). Knowledge can be proven by circumstantial evidence. *See State v. Hermosillo,* 88 N.M. 424, 425, 540 P.2d 1313, 1314 (Ct. App.1975). "The proven circumstances from which an accused's state of mind or intent can be inferred are his acts, conduct and words." *State v. Gattis,* 105 N.M. 194, 200, 730 P.2d 497, 503 (Ct.App.1986).

In upholding petitioner's convictions on direct appeal, the New Mexico Court of Appeals concluded that the following circumstantial evidence established beyond a reasonable doubt that petitioner knew the checks were forged: (1) he failed to pay the store after being told that one of the checks was returned unpaid; (2) he had a prior felony conviction; and (3) he admitted that he asked the maker of the checks to put false

the checks were forged and (2) his intent to injure or defraud the grocery store by passing the checks. Because the lack of evidence on the element of knowledge is enough to invalidate

petitioner's convictions, we need not consider whether there was a similar lack of evidence as to petitioner's intent to injure or defraud.

notations on the checks indicating he received them in the course of his employment so the checks would be easier to cash. *Stallings*, 104 N.M. at 663, 725 P.2d at 1231. The district court relied on two additional factors in concluding the evidence was sufficient on habeas review: petitioner failed to question why the checks were drawn on an out-of-state checking account; and petitioner failed to ascertain anything about the purported Randy Thacker's ability to pay on the checks. On appeal, the State relies on the same evidence in arguing that the evidence was sufficient to convict.

We note at the outset that all the evidence relied on by the State and the previous reviewing courts, with the exception of petitioner's failure to make good on the checks after being told one of them was returned unpaid, was adduced during the defendant's case; practically none of the allegedly pertinent evidence of knowledge came in during the State's case-in-chief. We have previously determined that no inference of petitioner's knowledge could be drawn from the evidence about petitioner's conversation with Morrison that was adduced in the State's case-in-chief. The additional evidence about that conversation that was adduced on rebuttal does not provide any additional support for an inference that petitioner knew the checks were forged.

Morrison did not testify that he told petitioner any of the checks were forged; rather, he simply said that he did not get paid on one of them. Petitioner's response to Morrison was entirely compatible with his asserted ignorance of the forgery: petitioner said he did not know why the check had been returned and, as far as he knew, the check was good. In accordance with our previous discussion, petitioner's statement that he had only $400.00 in savings, which Morrison indicated was not sufficient to cover his loss, does not support an inference that petitioner knew at the time he cashed the checks that any of them were forged.

■ The most damaging evidence against petitioner was his admission that he told the maker of the checks to put false notations on them indicating that petitioner received the checks in the course of his employment, rather than for personal goods and services. Although the notations represent a misrepresentation upon the face of the checks and, therefore, cast doubt on petitioner's general truthfulness and moral character, they do not support a logical inference that petitioner knew the checks were forged. The purpose of the notations was to facilitate cashing the third-party checks. The notations served the same purpose regardless of whether the checks were good or were forged. Therefore, petitioner's actions in having the false notations placed on the checks do not increase the likelihood that petitioner knew the checks were forged. *See Doe v. State*, 88 N.M. 347, 354, 540 P.2d 827, 834 (Ct.App.) (holding that defendant's furtive conduct, which was as compatible with defendant's belief that he was smoking tobacco in violation of school rules as it was with his belief that he was smoking marijuana, was not sufficient to support an inference that defendant knew the substance he was smoking was marijuana), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975) (table).

■ We turn, then, to petitioner's failure to question why the checks he received were drawn on an out-of-state bank, which the jury could have concluded was unusual. We note at the outset that the true owner of the account testified that he lived in Farmington, New Mexico, yet maintained a checking account in Oklahoma. In our mobile society, maintenance of an out-of-state bank account is not particularly unusual. Moreover, while the nature of the out-of-state checks may have given petitioner reason to question the creditworthiness of the purported Randy Thacker, that fact does not give rise to an inference that petitioner knew the checks were forged, especially in light of petitioner's uncontradicted testimony that he saw the identification of the person who represented himself to petitioner as Randy Thacker. Under the circumstances, we do not see how petitioner's failure to question why the checks were drawn on an out-of-state bank is evidence of petitioner's guilt.

■ Nor is petitioner's failure to ascertain information about the purported Randy Thacker's ability to pay on the checks evi-

dence of petitioner's guilt. Petitioner was charged with passing checks he knew were forged, not with passing checks he knew were not backed by sufficient funds. *See* N.M.Stat.Ann. § 30–36–4 (making it unlawful to issue a check knowing there are not sufficient funds or credit on deposit to pay the check in full). The purported Randy Thacker's ability to pay on the checks is not relevant to petitioner's knowledge that the checks were forged.

■ Finally, we consider the inferences that can be drawn from petitioner's past criminal record. Petitioner's prior conviction for attempted burglary and motorcycle theft does not support an inference that petitioner committed the forgeries charged here. *See* Fed.R.Evid. 404(b) ("Evidence of other crimes ... is not admissible to prove the character of a person in order to show action in conformity therewith."). Rather, the prior conviction is relevant only to the jury's determination of petitioner's credibility. *See Wright v. West*, —— U.S. ——, ——, 112 S.Ct. 2482, 2492, 120 L.Ed.2d 225 (1992) (holding that "the jury was entitled to discount [defendant's] credibility on account of his prior felony conviction").

If we assume the jury completely disbelieved petitioner, *see Cosby v. Jones*, 682 F.2d 1373, 1382 (11th Cir.1982) (holding that pursuant to *Jackson*'s requirement that the evidence be viewed in the light most favorable to the government, the court must "assume that the jury in its assessment of credibility did not believe [the defendant's] exculpatory testimony"), and, therefore, disregarded petitioner's testimony, as the State suggests in its brief, Respondent–Appellee's Answer Br. at 10–11, we are left with the evidence adduced during the State's case-in-chief and on rebuttal. As we discussed earlier, however, this evidence was not sufficient to support an inference that petitioner knew the checks were forged when he cashed them.

> [A]n essential of the due process guaranteed by the Fourteenth Amendment [is] that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

*Jackson*, 443 U.S. at 316, 99 S.Ct. at 2787. Overturning a state court conviction for lack of sufficient evidence is not a step that we take lightly or often. Nonetheless, when we have concluded "that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt," *id.* at 324, 99 S.Ct. at 2791–92, we have not hesitated to grant the petitioner habeas relief, *see Kelly*, 998 F.2d at 803; *Sanders/Miller v. Logan*, 710 F.2d 645, 647, 656 (10th Cir.1983), and we do not hesitate to do so here.

■ In closing, we note that implicit in the State's brief on appeal appears to be the argument that the jury could have inferred petitioner's guilty knowledge from its disbelief of his testimony. Although this circuit has not addressed this issue directly, several circuits have held that the jury's disbelief of a defendant's testimony can, in some limited instances, give rise to a positive inference of guilt. These circuits do not agree, however, on the circumstances that will support such an inference. The Fifth and Eleventh Circuits, for instance, hold that if a defendant's testimony is sufficiently intrinsically incredible or implausible, then the jury can draw an inference of guilt from its disbelief of that testimony. *See, e.g., United States v. Eley*, 723 F.2d 1522, 1525 (11th Cir.1984) (holding that defendant's "incredible explanation" of his possession of stolen goods was "so implausible that it [gave] rise to positive evidence in favor of the government"); *United States v. Restrepo–Granda*, 575 F.2d 524, 528 (5th Cir.) (noting that defendant's "inherently improbable story does not provide accused with a plausible explanation for his possession of the cocaine consistent with his innocence"), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978).

The Second and Ninth Circuits, on the other hand, do not consider the quality of the defendant's testimony; rather, they require other corroborating evidence of guilt. These circuits would never allow a finding of guilt to be predicated on the jury's disbelief of the defendant's testimony, but they would allow the jury's disbelief of the defendant's testi-

mony to bolster other, affirmative evidence of guilt. *See, e.g., United States v. Eisen,* 974 F.2d 246, 259 (2d Cir.1992) ("[T]he jury is free to draw negative inferences from an untruthful witness's testimony as long as there is affirmative testimony to supplement or corroborate those negative inferences."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1619, 123 L.Ed.2d 178, *and cert. denied,* —— U.S. ——, 113 S.Ct. 1840, 123 L.Ed.2d 467 *and cert. denied,* —— U.S. ——, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993); *United States v. Martinez,* 514 F.2d 334, 341 (9th Cir.1975) ("Disbelief of a defendant's own testimony may provide at least a partial basis for a jury's conclusion that the opposite of the testimony is the truth.... But such belief can provide only partial support: there must also be 'other objective evidence on the record which buttresses the fact finder's drawing of the opposite inference.'") (quoting *United States v. Chase,* 503 F.2d 571, 573 n. 4 (9th Cir.1974), *cert. denied,* 420 U.S. 948, 95 S.Ct. 1332, 43 L.Ed.2d 427 (1975)).

Finally, the D.C. Circuit distinguishes between inferences to be drawn from a defendant's demeanor and those to be drawn from a defendant's facially inconsistent or implausible testimony. *See United States v. Zeigler,* 994 F.2d 845, 849 (D.C.Cir.1993). The court has refused to uphold a conviction when the only way to do so is to assume that, based on the defendant's demeanor, the jury disbelieved the defendant's otherwise plausible testimony and, instead, believed the opposite of that to which she testified. *Id.* at 849–50. *But see United States v. Zafiro,* 945 F.2d 881, 888 (7th Cir.1991) (permitting jury to infer defendant's knowledge of presence of drugs from her demeanor while testifying and from expert testimony that "drug dealers do not discuss or deliver large quantities of drugs in the presence of bystanders"), *aff'd on other grounds,* —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993).

We need not decide which, if any, of these approaches we should adopt, because an inference of guilt is not permissible under any theory here. Petitioner's testimony was neither implausible, incredible, nor inherently inconsistent. Nor did the evidence adduced at trial otherwise corroborate an inference of guilty knowledge. The jury's disbelief of petitioner's testimony could not fill the gap left by the State's total lack of relevant evidence as to petitioner's guilty knowledge.

When "the evidence must be buttressed by surmise and conjecture, rather than logical inference in order to support a conviction, ... such conviction [cannot be allowed] to stand." *State v. Romero,* 67 N.M. 82, 83, 352 P.2d 781, 782 (1960). Because we conclude, after reviewing the evidence in the light most favorable to the State, that the evidence adduced at trial was not sufficient to support a finding of all the essential elements of forgery beyond a reasonable doubt, petitioner's convictions for forgery must fall. *See Kelly,* 998 F.2d at 809.

Therefore, the judgment of the district court is REVERSED and the action is REMANDED with directions to grant the writ of habeas corpus.