1997–NMSC–018

934 P.2d 1053

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Magdaleno BACA, Defendant–Petitioner.**

**No. 23343.**

Supreme Court of New Mexico.

Feb. 11, 1997.

Monica D. Munoz, Albuquerque, for Defendant–Petitioner.

Tom Udall, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, for Plaintiff–Respondent.

## OPINION

MINZNER, Justice.

1. This appeal is before the Court pursuant to our writ of certiorari to the Court of

Appeals. Defendant Magdaleno Baca contends that: (1) he was deprived of effective assistance of counsel because his attorney did not request a jury instruction on the single criminal intent doctrine; and (2) insufficient evidence was adduced at trial to support his forgery conviction. We conclude that the facts of this case would not support or warrant an instruction to the jury on the single criminal intent doctrine; thus, the ineffective assistance of counsel claim is without merit. We also conclude that the State offered substantial evidence at trial to support the conviction. Accordingly, we affirm the Court of Appeals, which had affirmed Baca's conviction in an unpublished decision. *State v. Baca,* No. 16,222, slip op. (N.M.Ct.App. Nov. 20, 1995).

### FACTS AND PROCEDURE

2. During Thanksgiving weekend in 1993, sometime between the time of closing on Wednesday, November 24, and the following Saturday, November 27, a number of blank checks were stolen from Danley Construction Company. During the next two weeks, five of the stolen checks were negotiated, each for a different amount. The checks appeared to bear the signature of a former owner of the company, Connie H. Danley, who had been deceased for some time. Two of the checks were negotiated on the same day, but at different locations. The other three checks were each negotiated at a different location and on a different date. All five checks were made payable to Magdaleno Baca and were endorsed with that name. Additionally, three of the five checks bore the notation "operator", as if they were for wages. Bill Danley reported the suspected crimes to the authorities and executed an affidavit of forgery. Baca was arrested and charged with one count of commercial burglary and five counts of forgery.

3. At trial, Bill Danley, the current owner of Danley Construction Company, testified that Baca had never worked for the company; that he did not recognize Baca in the courtroom; and that he knew of no reason why a company check would have been written to Baca. Further, the judge granted Baca's motion for a directed verdict on the commercial burglary charge, but denied his motion for directed verdict on the remaining forgery counts. The jury was instructed on five counts of forgery under NMSA 1978, Section 30–16–10(B) (Repl.Pamp.1994). Baca was convicted on all five counts.

### ISSUES REVIEWED

4. Baca appealed his conviction to the Court of Appeals on the same two issues raised here. The Court of Appeals affirmed his convictions by memorandum opinion. We granted certiorari on both issues. Additionally, we asked the parties to provide supplemental briefs on a particular point not otherwise specifically addressed: whether the State produced substantial evidence at trial, sufficient to sustain a finding beyond a reasonable doubt, that Baca knew the checks were forged.

5. Forgery has been defined as a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.7(j)(5) (1986). Forgery requires an intent to defraud. *Id.* Knowledge is also an element. Our forgery statute states, "Forgery consists of ... knowingly issuing or transferring a forged writing with intent to injure or defraud." Section 30–16–10(B).

6. Some of the facts of this case are similar to those proved in *Stallings v. Tansy,* 28 F.3d 1018, 1023 (10th Cir.1994), in which the Tenth Circuit held that the State failed to prove beyond a reasonable doubt that the defendant knew the checks were forged, and that therefore his conviction deprived him of due process. *See id.* at 1020–21 (discussing the requisite intent for forgery). In *Stallings,* the Tenth Circuit emphasized that under the New Mexico statute, the element of requisite knowledge is distinct and different from the element of intent to injure or defraud. *Id.* at 1020–21 n. 2. The court also held that a jury cannot reasonably infer the requisite knowledge solely from the fact that

a defendant requested a false notation on a check in order to encourage someone to cash it. *See id.* at 1022.

7. In this case Defendant Baca had not argued to the Court of Appeals that he lacked the requisite knowledge that the checks were forged. Nevertheless, we granted certiorari to ensure that the State had proven all of the elements of the crime, as required by due process. *See id.* at 1023 (discussing the constitutional importance of proving the elements of forgery).

### Issue 1. Ineffective assistance of counsel

8. Baca contends that he was deprived of effective assistance of counsel because his attorney failed to ask the trial court to instruct the jury on the single criminal intent doctrine, i.e., whether the five forgeries were distinct and separate crimes or parts of a larger single criminal scheme. *See State v. Brooks,* 117 N.M. 751, 754, 877 P.2d 557, 560 (1994) (holding that whether acts constituted a single offense presented a factual question to be decided by the jury). In *Brooks,* we held that "factual questions of intent must be decided by the jury unless the trial court can say under the circumstances that, as a matter of law, the act is either a separate crime or part of a broader scheme or plan." *Id.* at 754, 877 P.2d at 560. Based on *Brooks,* Baca argues that his actions in negotiating each of the five checks constitute a single, continuous transaction pursuant to a single scheme to defraud one victim, Danley Construction Company. Alternatively, Baca contends that whether his actions constitute one single forgery violation or multiple violations is a factual matter properly to be decided by the jury. Baca also asserts that the omission of an instruction on the single criminal intent for separate transactions was fundamental error. We disagree.

9. Our cases have applied the single criminal intent doctrine to larceny, *see, e.g., State v. Rowell,* 121 N.M. 111, 116–18, 908 P.2d 1379, 1384–86 (1995); *State v. Klasner,* 19 N.M. 474, 477–78, 145 P. 679, 680 (1914), as well as to embezzlement cases, *see, e.g., Brooks,* 117 N.M. at 754–55, 877 P.2d at 560–61; *State v. Pedroncelli,* 100 N.M. 678,

680, 675 P.2d 127, 129 (1984). However, our forgery statute suggests a legislative intent to make each act of forgery, each forged instrument, a separate offense: "Forgery consists of ... knowingly issuing or transferring *a forged writing* with intent to injure or defraud." Section 30–16–10(B) (emphasis added). Opinions from the New Mexico Court of Appeals support the conclusion that Section 30–16–10 suggests a legislative intent to authorize multiple punishments based on each distinct act of forgery. *See, e.g., State v. Orgain,* 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct.App.1993) (holding that "the legislature intended only one conviction for each forgery related to the same facts involving the same check"); *cf. State v. Borja–Guzman,* 121 N.M. 401, 404, 912 P.2d 277, 280 (Ct.App.) (holding that language of Controlled Substances Act indicates legislative intent to permit prosecution for each distinct act of delivery of a controlled substance), *cert. denied,* 121 N.M. 375, 911 P.2d 883 (1996).

10. The difference between our statutory law making forgery a crime and our statutory law making larceny and embezzlement crimes reflects a difference in the common law crimes our statutes codify. The common law of theft has evolved differently from the law of forgery. *See generally* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law,* 338–39 (3d ed. 1982) (discussing the trend of aggregating into a single crime a series of thefts from a single owner at a single location). In order to determine the highest grade of theft committed, the common law developed a principle for identifying a single offense of theft. Under that principle, the greater the total dollar amount of all the property stolen from a single location, the greater the degree of theft; thus, the taking of property during "a single continuing criminal impulse or intent pursuant to a general larcenous scheme or plan" was a single offense. *State v. Barton,* 28 Wash.App. 690, 626 P.2d 509, 512 (1981). Our courts have recognized the validity of the single larceny doctrine in *State v. Brown,* 113 N.M. 631, 632, 830 P.2d 183, 184 (Ct.App.1992). The Model Penal Code adopts a slightly different rule but with a similar objective.

The amount involved in a theft shall be deemed to be the highest value, by any reasonable standard, of the property or services which the actor stole or attempted to steal. Amounts involved in thefts committed pursuant to one scheme or course of conduct ... may be aggregated in determining the grade of the offense.

Model Penal Code § 223.1(2)(c) (1980). Both the common-law rule and the Model Penal Code provision attempt to facilitate the factfinder's exercise of authority to classify the degree of crime committed. *See id.* cmt. 3(b) (explaining how the Code facilitates the determination of the highest category of crime for which a defendant may be convicted).

11. In other states, there is authority to support an application of the single intent doctrine to forgery. *Compare Wiseman v. State*, 521 N.E.2d 942, 946 (Ind.1988) (holding that seven stolen checks presented to the bank at the same time, the same date, by the same person and all listed on the same deposit slip supported a single count of forgery) *with State v. Barton*, 626 P.2d at 512 (holding that five separate presentations of forged savings account withdrawal slips constituted "one criminal impulse pursuant to a general larcenous scheme," which were properly aggregated to one count of first-degree theft). The same authority does not exist under the forgery statute in New Mexico, and no other principle requiring aggregation applies to the facts of this case.

■ 12. There are New Mexico cases in which a defendant is "charged with multiple violations of a single statute based on a single course of conduct. The relevant inquiry in those cases is whether the legislature intended punishment for the entire course of conduct or for each discrete act." *Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). "Few, if any, limitations are imposed by the Double Jeopardy Clause on the legislative power to define offenses." *State v. Edwards*, 102 N.M. 413, 416, 696 P.2d 1006, 1009 (Ct.App.1984). "Whether a particular course of conduct involves one or more distinct 'offenses' under the statute depends on the legislative choice." *Id.* On different facts, we might be required to determine whether the Legislature intended multiple punishments under the forgery statute. On these facts, there is no question for the jury. The evidence in this case established multiple acts of forgery.

13. The evidence shows that Baca negotiated five "third-party" checks, each in a different amount, on four different dates, each in a different establishment. In this appeal, Baca has not directed us to any evidence in the record that these checks were forged as a part of one larger, continuous scheme or plan. *See Brooks*, 117 N.M. at 755, 877 P.2d at 561. It would have been error for the State to tally up the amounts of the checks and submit the case to the jury under the single intent theory because under these facts, as a matter of law, (1) there is no evidence of a single intent, and (2) under our statute the transfer of each forged check was a separate offense.

14. The Legislature's choice is clear. On these facts, the Legislature's definition required the court to instruct the jury on separate offenses. There being no evidentiary basis for suggesting a single offense, Baca's counsel did not provide ineffective assistance in failing to propose an instruction on the single intent doctrine. In addition, there is no basis for a determination that the trial involved fundamental error warranting reversal.

### Issue 2. Sufficiency of the evidence

■ 15. The Court of Appeals reviewed the evidence in this case and concluded that there existed substantial evidence to support a guilty verdict beyond a reasonable doubt. *State v. Baca*, No. 16,222, slip op. (N.M.Ct.App. Nov. 20, 1995). We agree. However, Baca did not argue that he lacked the requisite knowledge necessary to establish the crime of forgery by transferring or issuing, and the Court of Appeals memorandum opinion did not address directly the sufficiency of the evidence to establish that element. We focus our inquiry here on whether the State proffered sufficient evidence to allow the jury to infer that Baca acted with the requisite knowledge. "[T]he reviewing court must be able to articulate an analysis the jury might have used to determine guilt, and that analysis must be reason-

**128**

able." *State v. Sizemore,* 115 N.M. 753, 758, 858 P.2d 420, 425 (Ct.App.1993). We do so in this case by relying in part on the false notation "operator." We do not understand *Stallings* to have held that proof of a false notation is irrelevant in a prosecution for forgery. Rather, in that case, the Tenth Circuit concluded that, after rejecting the defendant's explanation of why the notation was made, the jury still had no basis for inferring guilty knowledge because his explanation was not inherently improbable. *Stallings,* 28 F.3d at 1023.

16. In this case, however, the jury was entitled to infer that the false notation demonstrated Baca's knowledge that the checks had been issued without authority. Baca presented checks bearing the notation of a specific job classification ("operator"), drawn on a construction company account. The evidence showed that Baca had never worked for the company. If Baca had never worked for the company, that is a fact he knew. The jury was entitled to reason that Baca knew the checks dated November 24, 25, and 26 were not validly issued for wages, because he knew he had never worked for the company. Moreover, Baca presented two of the "operator" checks on the same day, but to two different businesses, and negotiated each of the five checks at five different businesses. The jury was entitled to infer that Baca was attempting to conceal something from those businesses, and based on that inference, was entitled to reason that the fact of forgery was what he was attempting to conceal. Finally, it is reasonable to assume that if Baca knew that the three checks with the "operator" notation were issued without authority, he would have known the other two checks also were issued without authority. It was reasonable for the jury to infer guilty knowledge.

17. Additionally, the State admitted the actual checks into evidence. The jury was competent to compare the handwriting on the front of each check with Baca's endorsement on the back. The jury could thus determine that Baca himself provided some of the information on the front of each check. *See State v. Rotibi,* 117 N.M. 108, 112–13, 869 P.2d 296, 300–01 (Ct.App.1994) (upholding

jury's ability to ascertain guilt by comparing signature and handwriting in absence of handwriting expert opinion); *Orgain,* 115 N.M. at 125, 847 P.2d at 1379 (upholding a forgery conviction based on handwriting the jury could have concluded was "remarkably similar"). If the jury believed Baca had made some or all of the false writing on the front of the check, the jury was entitled to determine that Baca actually knew the checks were forged when he negotiated them.

18. Therefore, we hold that there was sufficient evidence to allow the jury to make a reasonable inference that Baca knew the checks were forged when he negotiated them, or that he forged them himself. Baca was not denied due process; the State proved every essential element of the crimes of which Baca was convicted.

### *CONCLUSION*

19. Baca was not deprived of effective assistance by his counsel's failure to request a jury instruction on the single criminal intent theory; the facts did not support such a theory. Substantial evidence supported all five counts of forgery. We therefore affirm the judgment of the trial court and the memorandum opinion of the Court of Appeals.

20. **IT IS SO ORDERED.**

FRANCHINI, C.J., and GERALD R. COLE, District Judge, sitting by designation, concur.