# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1928

CHRISTOPHER PEASE, VINCE VITI,
WILLARD BERGE, and MICHAEL GEAR,

*Plaintiffs-Appellants*,

v.

PRODUCTION WORKERS UNION OF
CHICAGO AND VICINITY LOCAL 707;
RANDALL INDUSTRIES, INC.; and
RANDALL RENTS OF INDIANA, INC.,

*Defendants-Appellees*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 6756—**James F. Holderman**, *Judge*.

———————

ARGUED SEPTEMBER 28, 2004—DECIDED OCTOBER 15, 2004

———————

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Local 707 of the Production
Workers Union and Local 150 of the Operating Engineers
Union have been engaged in a long-running battle for the
right to represent truck drivers and associated workers at
Randall Industries. The workers have twice voted in favor
of Local 707, which the NLRB has certified as their bar-

gaining representative; the Board has rejected Local 150's contentions that the employer committed unfair labor practices during the campaigns. But Local 150 has refused to give up, and the Board has ordered it to refrain from threatening adherents to Local 707. We have enforced the Board's order and held Local 150 in contempt for violating some of its terms. Still the battle continues. In this litigation four employees (with the aid of counsel furnished by Local 150) contend that Randall failed to carry out its collective bargaining agreement with Local 707. To succeed in such an action, the employees first must show that Local 707 violated its duty to represent them. See *DelCostello v. Teamsters*, 462 U.S. 151, 163-65 (1983) (discussing the elements of a hybrid duty-of-fair-representation and contract action); *Vaca v. Sipes*, 386 U.S. 171, 184-86 (1967) (same).

The district judge dismissed or granted summary judgment to Randall and Local 707 with respect to three employees' principal claims. See 2003 U.S. Dist. LEXIS 458 (N.D. Ill. Jan. 10, 2003); 2003 U.S. Dist. LEXIS 14751 (N.D. Ill. Aug. 22, 2003); 2003 U.S. Dist. LEXIS 20238 (N.D. Ill. Nov. 7, 2003). Other claims were submitted to a jury, which rejected all except one theory advanced by Willard Berge. The district judge then entered judgment in defendants' favor as a matter of law under Fed. R. Civ. P. 50. 2004 U.S. Dist. LEXIS 4055 (N.D. Ill. Mar. 12, 2004). All four plaintiffs have appealed, but their joint brief does not advance any argument on behalf of Michael Gear. This abandons his claim. And neither Christopher Pease nor Vince Viti seeks appellate review with respect to any theory that the jury rejected; their arguments are limited to claims that the district judge resolved before trial.

Pease appears to be engaged in bankruptcy fraud: he prosecuted this suit simultaneously with a personal bankruptcy in which he omitted from his schedule of assets the existence of this chose in action. Although the district judge rejected Randall's contention that the trustee in bankruptcy is the

only entity authorized to prosecute a claim on Pease's behalf (and for the benefit of his creditors rather than Pease personally), Randall has reasserted that argument on appeal. Pease does not meet it on the merits. Instead he asks us to ignore the point, asserting that Randall's decision not to file a cross-appeal forecloses the subject. Not so. A prevailing litigant may defend its judgment on any ground preserved in the district court. See *Massachusetts Mutual Life Insurance Co. v. Ludwig*, 426 U.S. 479 (1976). This contention was raised in the district court and thus is open to decision here.

We need not get into the subtle question whether there is any way in which a debtor in bankruptcy could prosecute a high-stakes claim such as this after concealing it from his creditors. Compare *Morlan v. Universal Guaranty Life Insurance Co.*, 298 F.3d 609 (7th Cir. 2002) (claims formally abandoned by a trustee revert to the debtor even if not scheduled, though the abandonment may be rescinded if induced by concealment), with *Leon v. Comcar Industries, Inc.*, 321 F.3d 1289 (11th Cir. 2003) (employees who conceal contract or other substantial claims from their creditors cannot pursue them during or after bankruptcy). Pease's claim belongs to his creditors (represented by the trustee); and the trustee, although notified belatedly, has declined either to prosecute the litigation or to relinquish it to Pease by formal abandonment. Pease has forfeited any opportunity to argue that the trustee did abandon it to him directly or by inaction after learning of its existence. Not that Pease had much of a claim to begin with. Local 707 took his discharge to arbitration and lost, following detection of another fraud: he did not have the sort of driver's license that he falsely had told Randall that he possessed and that was essential to his employment. None of the criteria for upsetting an arbitrator's award is even arguably satisfied.

Viti was laid off about a month after his hire. As the most junior employee, he was most exposed to the vagaries of

business, and it is undisputed that Randall reduced its staff after demand for its services slackened. Last hired, first fired, is what the collective bargaining agreement provided. It does not matter whether Viti had graduated from "probationary" status under the collective bargaining agreement; he was still the most junior. That Local 150 continues to argue on his behalf (and that of Pease) implies that this is vexatious litigation.

This leaves Berge, who advances several theories. The one on which the jury voted in his favor is that Randall departed from the collective bargaining agreement when it laid him off in favor of Roy Walker. Berge was hired in August 2001 and laid off in May 2002 in order to make room for Walker, who had more seniority than Berge as a truck driver but had been working in sales for the previous seven months. Walker testified, without contradiction, that he had been promised when he transferred to the sales position that he could go back to driving if the new job did not pan out. Berge insists, however, that the instant Walker left the bargaining unit he lost all his seniority, so that he could not displace any other employee. Randall and Local 707 took the view that workers who transfer from one job to another at Randall do not lose seniority—at least, that such an internal transfer should be treated no worse than a layoff, and the collective bargaining agreement provides that seniority lasts for a year following a layoff. Local 707 therefore supported Walker, and by doing this (Berge insists) deprived him of the "fair representation" that unions must provide to everyone they represent. The jury heard evidence that Local 707 was hostile to Local 150 and its supporters, of whom Berge was one. It also heard evidence that Local 707 and Randall had an understanding, in place before Walker bumped Berge, that workers who transferred to other positions at Randall kept their seniority in the event of a return to the bargaining unit. It was this evidence, which the district judge viewed as undisputed, that led to the Rule 50 judgment in defendants' favor.

According to Berge (and Local 150), the jury was free to disbelieve the sole witness who testified about this understanding, which had not been reduced to writing. And if the jury could disbelieve the testimony, Berge insists, then it also could find that Berge had the superior right to the position, for he had eight months' seniority and Walker had none. The argument is half right. Juries can reject testimony, but doing so is not the same thing as evidence to the contrary. See, e.g., *Krist v. Eli Lilly & Co.*, 897 F.2d 293 (7th Cir. 1990). That's an old, and very important, ingredient in the law of evidence. A jury's decision to disbelieve a witness (or conclude that the witness did not have an opportunity to observe or learn what happened) is consistent with that witness's proposition being true. Someone else may have had better knowledge, or better memory, or better ability to relate and thus to persuade. And if there is no other witness—as there was none in this case—that leaves a hole in the record. We do not know whether the proposition is true or false. (The wrinkle noted in *United States v. Zafiro*, 945 F.2d 881, 888-89 (7th Cir. 1991), affirmed on other grounds, 506 U.S. 534 (1993)—that disbelief of a criminal defendant's exculpatory testimony can imply consciousness of guilt and thus, like flight to avoid prosecution, add to the evidence in support of conviction—is not applicable here, and we need not discuss how far this proviso extends. See *Stallings v. Tansy*, 28 F.3d 1018 (10th Cir. 1994); *United States v. Zeigler*, 994 F.2d 845 (D.C. Cir. 1993).) When the record is silent, all turns on who had the burden of persuasion (better, the risk of non-persuasion) with respect to the point. See *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 746-47 (7th Cir. 1994); *NLRB v. Cutting, Inc.*, 701 F.2d 659, 663 (7th Cir. 1983).

So let us throw out the testimony about prevailing practices and see what happens. The answer is that Berge, as the plaintiff, is no better off, for a plaintiff bears the risk of non-persuasion. The collective bargaining agreement is

silent about how internal transfers affect seniority; it is not as if Randall needed to show that there had been an oral modification of the agreement. Transfers are un-pro-vided-for situations—and unless something requires trans-ferees to *lose* their seniority, then they retain it.

Given the lack of provision in the collective bargaining agreement, it is impossible to see how Local 707 could be deemed to have abandoned its duty of fair representation when it took the position that Walker retained his seniority. Unions regularly fight tooth and nail to establish seniority systems and avoid forfeitures of that benefit, which favors longer-term workers (and longer-term members!) over newcomers. Local 707 behaved according to expectations. Had the union instead supported Berge, then Walker would have had a much stronger claim that it had violated its duty.

Solving intra-workplace conflicts by seniority and nego-tiation is a principal function of labor unions. Federal law encourages the sort of thing that Local 707 did. Conflicting claims are worked out amicably between unions and employ-ers, not in litigation that puts the law of the shop to a jury that may know little about the participants' reasonable ex-pectations or the exigencies of industrial relations. Federal labor law ensures that disputes of this kind are resolved by the affected parties over the bargaining table, or by arbitra-tors knowledgeable about the business, rather than in court. That's why a hybrid contract/DFR suit does not get to first base unless the worker shows that the union has abandoned him to the wolves.

Welcoming support—Local 707 naturally thought better of those who favored its role and opposed Local 150's efforts to oust it—differs from abandoning anyone. Many a union (or public agency, for that matter) faithfully protects its politi-cal opponents—often from a sense of duty, and if that is lacking from a desire to improve its prospects of reelection.

Recall that Local 707 took the Pease discharge to arbitration despite the claim's weakness. Local 707 had a temptation to disfavor Berge, but did it yield to temptation? In the language of criminal law, where's the *actus reus*? Of that there is no evidence. Berge does not contend that, when the roles were reversed—when a supporter of Local 150 moved from one job to another—Local 707 contended that the transfer stripped the employee of seniority. Nothing in this record so much as hints that any defender of Local 707 has been treated better than Berge under similar circumstances. So the case should not have gone to trial. No reasonable jury could find that Local 707 failed to afford Berge objectively even-handed representation. That it resolved a conflict between two workers is not a reason to hand the ultimate decision to a panel of six laymen. A union can be mistaken in its understanding of the collective bargaining agreement without departing from its duty of fair representation; otherwise every claim of error would lead to a jury trial, and the need to show a denial of fair representation would merge into the merits.

   Plaintiffs' other arguments have been considered and need not be discussed.

                                                              AFFIRMED


A true Copy:

        Teste:


                          _____
                          *Clerk of the United States Court of*
                          *Appeals for the Seventh Circuit*