861 P.2d 233

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Ralph ALBERICO, Defendant–Appellant.**

**No. 12368.**

Court of Appeals of New Mexico.

Dec. 6, 1991.

Tom Udall, Atty. Gen., Max Shepherd, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Winston Roberts–Hohl, Santa Fe, for defendant-appellant.

## OPINION ON MOTION
## FOR REHEARING

HARTZ, Judge.

In its Motion for Rehearing, the State concedes that its "review of the research literature has not discovered any studies addressing the issue of whether the signs and symptoms of conscious experience in interpersonal behavior that constitute a psychiatric diagnosis of PTSD predict backwards to an actual life event." As the State acknowledges, the literature on PTSD typically describes studies of persons who are undisputed victims of a severe trauma such as a natural disaster, combat, or rape. The purpose of the studies is not to determine whether the event described by the person actually occurred but rather to understand and treat psychological problems that result from the traumatic event.

The State's brief goes on to say, however, that "while it has not been scientifically validated that a psychologist can determine from a diagnosis of PTSD that a trauma actually occurred, the literature clearly supports an inference by a jury that one who exhibits the signs and symptoms of post-traumatic stress disorder is more likely to have suffered a trauma than not." We are not certain what the State means by this statement, which is not supported by citation to any authority. There are three possible meanings. We believe that the State intended the third meaning addressed below, but discussion of the other two will clarify the issue.

First, if the statement means only that a person with PTSD has probably suffered trauma, the statement is a tautology. The Diagnostic and Statistical Manual of Mental Disorders (DSM–III–R) sets forth five diagnostic criteria that must be satisfied to establish PTSD. The first criterion is: "The person has experienced an event that is outside the range of usual human experience and that would be markedly distressing to almost anyone[.]" Thus, by definition, anyone with PTSD must have suffered significant trauma.

Second, if the statement means only that those *diagnosed* with PTSD are highly likely to have in fact suffered trauma, the proposition is of little relevance to the issue before us. One would expect mental health professionals to almost always be correct in concluding that an individual has suffered severe trauma because (1) patients usually tell the truth about such matters, (2) corroboration is usually available (as when the trauma derives from combat or a natural disaster), and (3) most people, including mental health professionals, are fairly good at determining whether someone is lying. Success by mental health professionals in accurately diagnosing PTSD does not in itself imply that they have any special expertise in determining whether a traumatic event actually occurred. In the absence of such special expertise, there is no basis to admit into evidence at trial their expert opinion (their diagnosis of PTSD) to prove the occurrence of the event.

The third possible meaning of the statement is that a person who satisfies the second, third, fourth, and fifth diagnostic criteria of PTSD probably has suffered trauma—the first diagnostic criterion. We have carefully reviewed the scientific literature provided by the State with its Motion for Rehearing and have not found any assertion of that proposition.

It is instructive to compare the diagnosis testimony here to the testimony of a polygrapher. The diagnosis was predicated on a determination of the veracity of the complainant. (On cross-examination Dr. Lenssen made clear that the alleged rape was the traumatic event that satisfied the first criterion for a diagnosis of PTSD.) The diagnosis testimony was tantamount to an assertion that the complainant was truthful. Cloaking that assertion in a diagnosis did not change the nature of the assertion; all the jury needed to do was draw the inevitable conclusion of veracity from the diagnosis of PTSD. Thus, the gist of Lenssen's testimony was comparable to that of a polygraph expert. The difference is that instead of measurements of the physiological state of the subject provided by a polygraph, Dr. Lenssen relied on responses to multiple choice tests and ink blots, the internal coherence of the complainant's account of events, the complainant's affect in describing the event, etc. The refusal by the great majority of jurisdictions to admit polygraph evidence absent a stipulation by the parties is just one indication of the reluctance of courts to permit expert testimony evaluating a person's veracity on the basis of "scientific" observations of the person. Even in this jurisdiction, which is one of the few to permit polygraph evidence, *see* SCRA 1986, 11–707, such evidence is admissible under our rules of evidence only because a showing was made to the supreme court rules committee that polygraph techniques can be highly reliable in determining whether a person is lying. Nothing close to a comparable showing has been made in this case.

We deny the Motion for Rehearing and remand for a new trial to be conducted consistently with the opinion in this case.

IT IS SO ORDERED.

CHAVEZ, J., concurs.