1997-NMCA-059

943 P.2d 544

**STATE of New Mexico,
Plaintiff–Appellee,**

**v.**

**Bobby Gene WHITE, Defendant–
Appellant.**

**No. 17108.**

Court of Appeals of New Mexico.

May 20, 1997.

Certiorari Denied June 19, 1997.

Tom Udall, Attorney General, Bill Primm, Assistant, Attorney General, Santa Fe, for Appellee.

T. Glenn Ellington, Chief Public Defender, Will O'Connell, Sue A. Hermann, Assistant Appellate Defenders, Santa Fe, for Appellant.

## OPINION

HARTZ, Chief Judge.

(1) Defendant was charged with criminal sexual penetration of an eight-year-old child (the Child). His first trial ended with a hung jury. He was convicted at a second trial. On appeal he contends that three errors by the district court require reversal: (1) the court's refusal to permit expert testimony regarding post-traumatic stress disorder (PTSD); (2) the court's refusal to permit testimony regarding Defendant's relationship with the Child and her family; and (3) the court's refusal to instruct the jury on the lesser included offense of criminal sexual contact of a minor. We agree that exclusion of the PTSD testimony was reversible error. Consequently, we need not resolve the other two claims of error, although we note that the second claim was not preserved below and we briefly discuss the third claim.

## I. PTSD TESTIMONY

(2) The Child testified that the incident occurred in November 1994, when she was eight years old. Defendant was babysitting the Child and her three younger siblings while their parents were out of town for the day. The Child testified that on the night of the incident Defendant told the others to go to bed but told her to stay up, took her to her parents' bedroom, told her to take off her

clothes, took off his clothes, and then penetrated her.

(3) Defendant denied any sexual contact with the Child. He also attempted to prove that the Child had not been sexually assaulted. He was permitted to introduce evidence that the Child had not suffered the physical consequences one would expect if the alleged penetration had actually occurred. Gail Johnson Gutierrez, a certified nurse practitioner who had examined the Child in late December 1994, testified that she saw no evidence of any trauma to the Child's vaginal area.

■ (4) Defendant was not permitted, however, to put on expert evidence suggesting that the Child had not suffered the psychological injuries that one would expect if she had been sexually assaulted. The district court, adopting its ruling from the first trial, disallowed the testimony of Dr. Susan Cave, a psychologist. According to Defendant's proffer at the first trial, Dr. Cave would testify concerning the common manifestations of PTSD, which one would expect to see in a child who had been sexually abused. Although Dr. Cave had not examined the Child, defense counsel had elicited from the Child's mother that the Child did not display those symptoms.

(5) The State did not challenge Dr. Cave's qualifications as an expert. In fact, at the first trial the State did not oppose Dr. Cave's testimony until the court itself raised objections.

■ (6) The court first expressed concern that Dr. Cave's testimony would amount to improper comment on the Child's veracity. That concern would be appropriate only if the expert witness directly testified to an opinion regarding the Child's veracity or stated that the Child was or was not sexually assaulted. See State v. Alberico, 116 N.M. 156, 175, 176, 861 P.2d 192, 211, 212 (1993); State v. Lucero, 116 N.M. 450, 454–55, 863 P.2d 1071, 1075–76 (1993). Defendant, however, did not propose to offer such an opinion. The fact that expert testimony contradicts or supports the testimony of another witness does not mean that the expert testimony constitutes comment on the other witness's veracity. Otherwise, virtually all expert testimony would be inadmissible. One must distinguish between expert opinion that contradicts or supports a witness and expert opinion regarding a witness's veracity. It is only the latter type of testimony that is prohibited. See Alberico, 116 N.M. at 176, 861 P.2d at 212.

■ (7) The court also expressed concern that Dr. Cave had not personally examined the Child. But expert opinion may be helpful, and admissible, by conveying general knowledge without any reference by the expert to the alleged specific facts of the case. See Rule 11–702 NMRA 1997. For example, we have noted that when a defendant accused of rape has challenged the credibility of the alleged victim because she acted in ways that appear inconsistent with having been raped, courts have almost uniformly admitted expert testimony that rape victims often engage in such behavior. See State v. Alberico, 116 N.M. 178, 181–82, 861 P.2d 219, 222–23 (Ct.App.1991), rev'd on other grounds, 116 N.M. 156, 861 P.2d 192 (1993). There is no reason to require an expert witness to have examined the alleged victim. cf. Rule 11–701 NMRA 1997 (requiring that lay testimony be based on personal observation). The foundation for the relevance of the expert testimony may be supplied by other witnesses. One could infer from the mother's testimony that the Child did not suffer symptoms that Dr. Cave would have testified to be typical of victims of sexual abuse. The mother's testimony would form an adequate foundation to support the relevance and helpfulness of Dr. Cave's testimony. On appeal the State contends that it could have proved that the Child in fact suffered symptoms of PTSD. Ordinarily, however, such a dispute concerning the factual predicate for the expert testimony would not justify exclusion of the testimony. At trial the prosecutor did not object to Dr. Cave's testimony on that ground, nor was that a concern mentioned by the court.

(8) A third concern of the district court was that Dr. Cave's opinion might confuse the jury into thinking that psychological injury to the Child was an element of the offense.

But we fail to see why a jury instruction would not cure any problem in that regard.

■ (9) Finally, the court ruled that the testimony would not assist the jury, was not relevant, and would be unduly prejudicial to the State. This ruling was error, even though we defer to such rulings by the district court under an abuse-of-discretion standard. *See Alberico*, 116 N.M. at 169, 861 P.2d at 205. Our Supreme Court has ruled that "PTSD testimony is grounded in valid scientific principle," *id.* at 173, 861 P.2d at 209, and "PTSD evidence is both valid and probative and . . . is not unduly prejudicial," *id.* at 175, 861 P.2d at 211. In the *Alberico* cases PTSD testimony was used by the State because it made guilt more probable. *See id.* at 172, 861 P.2d at 208. Here, it would have been used by the Defendant for the opposite purpose. But the Supreme Court's ruling would be applicable in either context. We recognize that under an abuse-of-discretion standard, we could affirm contradictory decisions by different trial courts based on the same underlying facts. When it is rational to rule either of two ways, neither ruling constitutes an abuse of discretion. Nevertheless, given the endorsement of PTSD testimony by our Supreme Court and the absence of any meritorious reason peculiar to this case for disallowing such testimony, we cannot countenance a double standard that would foreclose Defendant from using the testimony. Indeed, with respect to controversial scientific evidence, constitutional concerns may require admission of evidence offered by a criminal defendant even when the government is barred from offering similar evidence. *See Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (hypnotically refreshed testimony by defendant); Edward J. Imwinkelried & Norman M. Garland, *Exculpatory Evidence* §§ 6–4, 6–5 (2d ed. 1996). We note that the State raised no objection to the underlying science. *Cf. State v. Alberico*, 116 N.M. 192, 861 P.2d 233 (Ct.App.1991) (discussing scientific foundation of PTSD testimony), *rev'd*, 116 N.M. 156, 861 P.2d 192. We therefore hold that on the record before us, exclusion of Dr. Cave's testimony was reversible error.

## II. EVIDENCE OF DEFENDANT'S RELATIONSHIP WITH CHILD'S FAMILY

(10) At the first trial, which resulted in a hung jury, Defendant elicited testimony from the Child's mother regarding the relationship between Defendant and the Child's family. Defendant first met the parents in July or August when the Child's father picked him up while hitchhiking. The parents permitted Defendant to stay in an apartment behind their home. Eventually he moved into the home and helped the parents with their home business. He also helped to feed and clothe the children, helped with chores around the house, and took the children to school. He moved out on December 24, 1994, three days before the Child first told her mother that Defendant had sexually abused her.

(11) At the second trial, however, the State objected when defense counsel asked the Child whether Defendant helped the children get ready for school. The State argued that the evidence would be irrelevant. The court indicated its view that the evidence constituted character evidence and that if Defendant offered such character evidence, the court would reconsider its earlier decision not to permit the State to introduce evidence of Defendant's prior conviction for lewd conduct. When defense counsel protested that the evidence of his relationship with the family had been admitted in the first trial, the court pointed out that the State had not objected at that time. After an extensive discussion outside the presence of the jury, defense counsel ultimately stated that he did not wish to open the door to permit evidence of Defendant's prior conviction and therefore chose not to pursue the line of questioning.

■ (12) By not pursuing the line of questioning, Defendant failed to preserve any error by the district court in ruling that the questioning would be eliciting character evidence. After all, the court would have permitted the questioning. The real complaint of Defendant is that the court ruled, at least tentatively, that pursuit of the line of questioning would cause the court to admit evidence of Defendant's prior conviction. Even assuming that Defendant could challenge that tentative ruling on appeal, *but cf. Luce*

**514**

*v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (defendant who did not testify cannot challenge trial court's ruling in limine that prosecution could impeach defendant with prior conviction), the briefs do not adequately describe for us the context in which the prior conviction would have been admitted and the purpose of its admission. *See* Rule 11–609(A) NMRA 1997 (impeachment of witness with prior conviction); Rule 11–404(B) NMRA 1997 (evidence of other crimes to prove motive, intent, etc); Rule 11–405(A) NMRA 1997 (specific instances of conduct can be used to prove character only on cross-examination). Therefore, we do not express a view on the merits of this issue. Retrial is required in any event.

## III. LESSER–INCLUDED–OFFENSE INSTRUCTION

(13) Defendant also contends that the district court erred in rejecting his request for an instruction on the lesser included offense of criminal sexual contact. The district court's reason for rejecting the request was apparently that the Child testified that she was penetrated whereas Defendant denied any contact at all with the Child, leaving no middle ground for a finding of contact without penetration.

(14) A lesser-included-offense instruction should be given if there is a rational view of the evidence that would lead the jury to conclude beyond a reasonable doubt that Defendant committed the lesser included offense while still harboring a reasonable doubt that Defendant committed the charged offense. *See State v. Diaz*, 121 N.M. 28, 30, 908 P.2d 258, 260 (Ct.App.), *cert. denied*, 120 N.M. 828, 907 P.2d 1009 (1995). The evidence at trial might have supported such a resolution by the jury in this case: (1) the Child could not remember whether Defendant's penis was hard or soft; (2) the Child did not feel any pain during the incident; and (3) a certified nurse practitioner saw no evidence of trauma to the Child's vagina approximately a month after the incident. But we cannot be sure how the testimony will develop at the next trial. We therefore leave it to the district court in the first instance to determine whether a lesser-included-offense instruction is warranted on retrial.

## IV. CONCLUSION

(15) We reverse Defendant's conviction and remand for a new trial.

(16) **IT IS SO ORDERED.**

DONNELLY and APODACA, JJ., concur.