2003-NMCA-039

62 P.3d 1286

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mario Hector ALVAREZ–LOPEZ,
Defendant–Appellant.**

**No. 22,189.**

Court of Appeals of New Mexico.

Dec. 19, 2002.

Certiorari Granted, No. 27,869,
Feb. 4, 2003.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Laurel A. Knowles, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Defendant Mario Alvarez–Lopez appeals his convictions for aggravated residential burglary, conspiracy to commit residential burglary, larceny over $250, and larceny of a firearm. As error, he asserts (1) erroneous admission of hearsay statements of a co-defendant, (2) double jeopardy, and (3) insufficiency of evidence. We affirm Defendant's convictions for aggravated burglary, conspiracy to commit burglary, and larceny of a firearm. We reverse Defendant's conviction

of larceny over $250 on the ground of double jeopardy.

## BACKGROUND

{2} While at work, the victim was informed that someone was looking in the window of his mobile home. He drove home with an employee and saw an unfamiliar car with a Texas license plate parked in front of his home. Defendant appeared from behind the home, and the victim asked Defendant what he was doing there. Defendant responded that he was looking for somebody who was dealing in race horses. Victim said there was no such person on the property and Defendant drove away in the Texas car.

{3} The victim noticed that a bedroom window had been broken. He then observed another man, later identified as Benjamin Valle Perches (co-defendant) come out of the home, carrying a tape measure and a utility knife belonging to the victim. While the employee kept watch over co-defendant, the victim went inside the home where he saw items piled up in the hallway, including several rifles and shotguns, a VCR, a pair of boots, and shoes, all belonging to the victim.

{4} The police arrived, arrested co-defendant, and read co-defendant his *Miranda* rights. At a police station, an officer interrogated co-defendant, who described the events and Defendant's participation in the burglary. Co-defendant identified Defendant from a photo array. Thereafter, co-defendant was deported to Mexico. He was not available for Defendant's trial.

{5} Defendant was convicted of aggravated residential burglary, NMSA 1978, § 30–16–4 (1963); conspiracy to commit residential burglary, NMSA 1978, § 30–28–2 (1979); larceny over $250 and larceny of a firearm, NMSA 1978, § 30–16–1 (1987). This appeal followed.

## DISCUSSION

### A. Admissibility of Co–Defendant's Statements

{6} On the grounds of hearsay and violation of the state and federal Confrontation Clauses, Defendant objected to the admission of co-defendant's out-of-court statements which were admitted in evidence as statements against penal interest. *See* U.S.

Const. amends. VI, XIV; N.M. Const. art. II, § 14; Rule 11–804(B)(3) NMRA 2002. Defendant asserted the statements were not against co-defendant's penal interest because co-defendant had been caught red-handed at the scene of the crime and was only attempting to minimize his own role, shift primary responsibility to Defendant, and receive lenient treatment.

{7} The district court initially ruled a written statement admissible, but became troubled by one of co-defendant's remarks, namely, that "[Defendant] wanted to burglarize a house, he's always done that." Rather than admit the written statement, the court permitted the interrogating officer to summarize co-defendant's statement without mention of the troubling remark. The officer began his testimony with facts told to him by co-defendant but not in the written statement: that both men had been drinking beer at the home of a relative of Defendant, and then, as they drove away from the home, the two discussed committing the burglary. Then, summarizing the written statement, the officer testified that Defendant was driving the car; co-defendant did not know where he was or what town he was in; they stopped in front of the mobile home, and Defendant got out of the car with a tire iron and proceeded to break a window of the home with the tire iron; both men entered through the window; once inside, co-defendant took a VCR, along with a pair of shoes; Defendant broke into the gun cabinet by breaking the glass of the cabinet and then removed several rifles and shotguns; both men piled up the stolen items in the hallway; Defendant suddenly yelled to co-defendant to hurry up and to grab the rifles; Defendant fled, leaving co-defendant behind; co-defendant was caught by the victim coming out of the home.

{8} Defendant contends co-defendant's statements were made to curry favor and to shift blame to Defendant. As such, Defendant argues, co-defendant's statements were exculpatory, not inculpatory. Defendant therefore attacks the propriety of the admission of co-defendant's statements under Rule 804(B)(3) as statements against penal interest.

{9} Rule 11–804(B)(3) excepts from hearsay preclusion statements made against penal interest. We review under an abuse of discretion standard whether the statements were erroneously admitted by the district court under this exception. *See State v. Reyes,* 2002–NMSC–024, ¶¶ 34–35, 132 N.M. 576, 52 P.3d 948; *State v. Torres,* 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267 (recognizing that there is "nothing sufficiently unique about Rule 11–804(B)(3) [as would] convince [the Court] to depart from the deferential standard of review applicable to other exceptions to the hearsay rule"); *State v. Attaway,* 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (providing that "[i]f the concerns of judicial administration—efficiency, accuracy, and precedential weight—make it more appropriate for a district judge to determine whether the established facts fall within the relevant legal definition, we should subject his determination to deferential, clearly erroneous review"); *see also State v. Benavidez,* 1999–NMSC–041, ¶ 2, 128 N.M. 261, 992 P.2d 274 (reversing and vacating portion of Court of Appeals opinion that discussed statement against interest exception to hearsay rule on the grounds that Court of Appeals applied the de novo, rather than the abuse of discretion, standard of review).

{10} The New Mexico Supreme Court has supplied a framework within which to analyze a district court's admission of a statement under Rule 11–804(B)(3). In evaluating whether the court abused its discretion in its admission of co-defendant's statements under Rule 11–804(B)(3), we examine the statements considering the surrounding circumstances, "including to whom the statement was made, whether the declarant attempted to curry favor with authorities, and whether the statement is collateral to the declarant's criminal liability or exculpatory of the declarant." *Torres,* 1998–NMSC–052, ¶ 29, 126 N.M. 477, 971 P.2d 1267 (citations omitted). However, rather than require the district court to dissect inculpating narratives or confessions in such a fashion as would call for the redaction of large parts of a confession, our Supreme Court has concluded that "facially-neutral but contextually-incriminating details may be admitted if a reasonable person in the declarant's position would not

have revealed them unless believing them to be true due to their strong tendency to subject the declarant to criminal liability." *Id.* ¶ 14; *see State v. Gonzales,* 1999–NMSC–033, ¶¶ 7–9, 128 N.M. 44, 989 P.2d 419 (declining to read declarant's statement in such a way as would cause it to lose any contextual meaning). The individual inculpatory statements must not be read in a vacuum, but rather must be understood within the context in which they are uttered. *See id.; Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267.

{11} Defendant wants this Court to look at the circumstances from co-defendant's point of view, that is, having been caught red-handed "with the goods" and in possession of a knife, he may have believed that whatever he said could not dig his guilt any deeper and that he would fare better if he spilled the beans and shifted blame. However, while this may truly have been what co-defendant was thinking or believed, the law approaches the question of whether statements are against penal interest from a more objective standpoint. Rule 804(B)(3) provides that a statement is not excluded by the hearsay rule if it is "so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Thus, we must view the statements from the viewpoint of a reasonable person in co-defendant's position.

{12} A person who knows he is committing one crime may also, at the same time, commit crimes of which he may not be aware. A person who knows he is committing one particular crime or type of crime should understand that statements he makes might draw different or further charges. Here, co-defendant undoubtedly knew he was stealing someone else's personal property. He was undoubtedly aware that, because he was caught red-handed stealing another's property from that person's residence, he would be charged with a residential burglary or larceny. At the same time, it was obvious to the police who arrested co-defendant that co-defendant had committed a residential burglary or larceny. However, nothing in the apprehension of co-defendant indicated a

conspiracy or that co-defendant participated in aggravated burglary with a tire iron. Yet co-defendant made statements that were inculpatory as to the offenses of conspiracy and aggravated burglary with a tire iron. Thus, while he may not have consciously thought he might also be charged with conspiracy and participation in aggravated burglary with a tire iron, the fact is that he was charged with the former, and likely could have been charged with the latter, based on the statements he made.

{13} The fact that co-defendant may not have figured his statements would incriminate him any more than he was already incriminated by having been caught red-handed does not eliminate the fact that a reasonable person in his position would have understood that his statements might trigger charges that were not otherwise obvious to him or to the police. His statements did in fact trigger a conspiracy charge based on the circumstances he described—proscribed conduct of which co-defendant is deemed by law to be aware was unlawful. Viewing co-defendant's statements from the standpoint of a reasonable person committing a crime, the district court could reasonably conclude that the statements "so far tended to subject [co-defendant] to ... criminal liability ... that [he] would not have made the statement[s] unless believing them to be true" under Rule 11–804(B)(3).

{14} Thus, a court could reasonably conclude that co-defendant's statements were not collateral to his criminal liability and were not self-exculpatory. *Torres,* 1998–NMSC–052, ¶ 29, 126 N.M. 477, 971 P.2d 1267. A review of co-defendant's statements provides an adequate basis upon which a rational court could make such a determination. *See State v. White,* 1997–NMCA–059, ¶ 9, 123 N.M. 510, 943 P.2d 544 ("When it is rational to rule either of two ways, neither ruling constitutes an abuse of discretion."). Although co-defendant was caught red-handed and faced possible charges for one count of aggravated burglary given his possession of the utility knife, larceny over $250, and larceny of a firearm, co-defendant was not caught red-handed in a conspiracy. By making his statements to the investigator, howev-

er, co-defendant implicated himself in a conspiracy. *See* § 30–28–2; *State v. Toney,* 2002–NMSC–003, ¶¶ 6–7, 131 N.M. 558, 40 P.3d 1002 (holding court did not abuse its discretion in admitting portions of the declarant's statement referring to the defendant under Rule 11–804(B)(3) where such portions "support[ed] a conspiracy between [the declarant] and [the] [d]efendant"); *Torres,* 1998–NMSC–052, ¶ 17, 126 N.M. 477, 971 P.2d 1267 (rejecting the defendant's argument that the declarant's statement exculpated declarant from murder charges, noting instead that "a closer inspection of [the declarant's] statements describing the concerted actions of him and [the defendant] reveals that [the declarant] actually inculpated himself ... either as a principal or under a theory of accessory liability"). Moreover, co-defendant's statements further subjected co-defendant to a possible additional charge of a second count of aggravated burglary given Defendant's use of the tire iron in the commission of the burglary. *See* UJI 14–2822 NMRA 2002 (describing accomplice liability); *see also State v. Lopez,* 2000–NMSC–003, ¶¶ 18–19, 128 N.M. 410, 993 P.2d 727 (separating a statement into unreliable Rule 11–804(B)(5) statements and a reliable Rule 11–804(B)(3) statement, and determining the reliable portion admissible under Rule 11–804(B)(3) to be that which exposed the declarant to additional criminal liability as an accessory).

{15} Accordingly, considering the circumstances of the statement, *see Gonzales,* 1999–NMSC–033, ¶¶ 7–9, 128 N.M. 44, 989 P.2d 419, and *Torres,* 1998–NMSC–052, ¶¶ 14, 29, 126 N.M. 477, 971 P.2d 1267, we cannot say that the district court abused its discretion. The court could reasonably have determined that co-defendant's statements did not shift blame to Defendant, but rather equally incriminated both himself and Defendant. *See Reyes,* 2002–NMSC–024, ¶ 38, 132 N.M. 576, 52 P.3d 948 (holding that statement properly admitted under Rule 11–804(B)(3) where statement evinced inside knowledge of the crime and equally incriminated the declarant); *State v. Martinez–Rodriguez,* 2001–NMSC–029, ¶ 24, 131 N.M. 47, 33 P.3d 267 (holding court did not abuse its discretion by admitting statement under Rule 11–804(B)(3)

as the statement equally incriminated the declarant, "rather than minimizing his culpability by shifting responsibility to [the defendants]"). In fact, each statement made by co-defendant to the investigator could be used either to prove the necessary elements or provide the necessary context within which his criminal liability for aggravated burglary, conspiracy to commit burglary, larceny over $250, and larceny of a firearm could be secured. *See Gonzales,* 1999–NMSC–033, ¶¶ 7–9, 128 N.M. 44, 989 P.2d 419; *Torres,* 1998–NMSC–052, ¶ 14, 126 N.M. 477, 971 P.2d 1267.

{16} Further, the district court could reasonably determine that co-defendant's statements were not made in an attempt to curry favor with the authorities. Although co-defendant's statements were made to an investigator, and while in custody, rather than to a private individual, they were nonetheless made after he had been informed of his *Miranda* rights, and the statements themselves indicate that no promises or threats were made by the officer in exchange for his cooperation. *See State v. Lopez,* 2000–NMSC–003, ¶ 18, 128 N.M. 410, 993 P.2d 727 (stating in a Confrontation Clause analysis that a custodial statement is not per se unreliable and that the Court is to look at whether circumstances indicating unreliability are present); *Torres,* 1998–NMSC–052, ¶ 18, 126 N.M. 477, 971 P.2d 1267 (relying on *Miranda* warnings and that police did not in any way offer leniency in exchange for declarant's statement in concluding that it was not given to curry favor with police); *State v. Sanchez,* 112 N.M. 59, 64, 811 P.2d 92, 97 (Ct.App. 1991) (same).

{17} We hold that the district court did not abuse its discretion in determining that co-defendant's statements were admissible as statements against penal interest under Rule 11–804(B)(3). Defendant nonetheless maintains that the admission of co-defendant's out-of-court statements violated his rights under the state and federal Confrontation Clauses. *See* U.S. Const. amends. VI, XIV; N.M. Const. art. II, § 14.

{18} We review de novo whether admission of hearsay evidence violates the Confrontation Clause. *Reyes*, 2002–NMSC–024, ¶ 39, 132 N.M. 576, 52 P.3d 948; *Torres*, 1998–NMSC–052, ¶ 20, 126 N.M. 477, 971 P.2d 1267. "In general, there is no Confrontation Clause problem in admitting a hearsay statement if the declarant is unavailable and the statement bears adequate indicia of trustworthiness … [,] [which] may be found either by determining that the hearsay exception is a firmly rooted one or that the circumstance surrounding the making of the statement 'bears adequate indicia of reliability.' " *Reyes*, 2002–NMSC–024, ¶ 39, 132 N.M. 576, 52 P.3d 948 (citations omitted); *cf. Lopez*, 2000–NMSC–003, ¶ 15, 128 N.M. 410, 993 P.2d 727 (analyzing the trustworthiness under Confrontation Clause of a taped hearsay statement incriminating the defendant to determine if "independent particularized guarantees of trustworthiness were present" because the catch-all exception, Rule 11–804(B)(5), was not a firmly-rooted exception).

{19} The *Reyes* requirements were met in this case. Defendant does not dispute that co-defendant was unavailable and Rule 804(B)(3) is a firmly-rooted hearsay exception. *Toney*, 2002–NMSC–003, ¶ 11, 131 N.M. 558, 40 P.3d 1002. Thus, as we have concluded that the district court properly admitted co-defendant's statements under the penal interest exception to the hearsay rule, which is a firmly rooted hearsay exception such as would satisfy the indicia-of-trustworthiness requirement of the Confrontation Clause, Defendant's constitutional claim is without merit. *See id.; accord Toney*, 2002–NMSC–003, ¶¶ 10–11, 131 N.M. 558, 40 P.3d 1002; *Martinez–Rodriguez*, 2001–NMSC–029, ¶ 27, 131 N.M. 47, 33 P.3d 267; *Gonzales*, 1999–NMSC–033, ¶ 19, 128 N.M. 44, 989 P.2d 419. Consequently, in applying the *Reyes* Confrontation Clause requirements, we do not consider the fact that the statements were made to an investigator to require a different result. Furthermore, even were the fact that the statements were made in custodial interrogation (as opposed, for example, made to an acquaintance in casual conversation) to be considered "critical" under a confrontation clause analysis, *see Toney*, 2002–NMSC–003, ¶¶ 10, 12, 131 N.M. 558, 40 P.3d 1002 (distinguishing between statements made in police custodial interrogation and statements made to an acquaintance in casual conversation), we cannot say, considering the totality of the circumstances surrounding the making of the statements, that the statements lacked adequate indicia of reliability.

## B. Double Jeopardy Based on Larceny Convictions

{20} Defendant was convicted of both larceny over $250 (and under $2500) as to the VCR and shoes, and larceny of a firearm as to the rifles and shotguns, both of which are fourth degree felonies. Defendant asserts that the two convictions violated his right to be free from double jeopardy because, under New Mexico's single larceny doctrine, when several articles are stolen from the same owner at the same time and place, multiple larceny convictions violate double jeopardy. *See* U.S. Const. amend. V; N.M. Const. art. II, § 15; *State v. Baca*, 1997–NMSC–018, ¶ 10, 123 N.M. 124, 934 P.2d 1053 (stating that the doctrine generally applies when the takings are with "a single continuing criminal impulse or intent pursuant to a general larcenous scheme or plan") (internal quotation marks and citation omitted); *State v. Morro*, 1999–NMCA–118, ¶¶ 21–23, 127 N.M. 763, 987 P.2d 420 (discussing history of recognizing larceny as a single offense in New Mexico); *State v. Brown*, 113 N.M. 631, 632–34, 830 P.2d 183, 184–86 (Ct.App.1992) (recognizing validity of the single larceny doctrine based on the appropriate unit of prosecution analysis in *Herron v. State*, 111 N.M. 357, 359, 805 P.2d 624, 626 (1991)). We review de novo whether Defendant's larceny convictions violated his right to be free from double jeopardy. *See State v. Segura*, 2002–NMCA–044, ¶ 7, 132 N.M. 114, 45 P.3d 54.

{21} The larceny statute provides:

Larceny consists of the stealing of anything of value which belongs to another.

Whoever commits larceny when the value of the property stolen is one hundred dollars ($100) or less is guilty of a petty misdemeanor.

Whoever commits larceny when the value of the property stolen is over one hundred dollars ($100) but not more than two hundred fifty dollars ($250) is guilty of a misdemeanor.

**Whoever commits larceny when the value of the property stolen is over two hundred fifty dollars ($250) but not more than two thousand five hundred dollars ($2,500) is guilty of a fourth degree felony.**

Whoever commits larceny when the value of the property stolen is over two thousand five hundred dollars ($2,500) but not more than twenty thousand dollars ($20,000) is guilty of a third degree felony.

Whoever commits larceny when the value of the property stolen is over twenty thousand dollars ($20,000) is guilty of a second degree felony.

Whoever commits larceny when the property of value stolen is livestock is guilty of a third degree felony regardless of its value.

**Whoever commits larceny when the property of value stolen is a firearm is guilty of a fourth degree felony when its value is less than two thousand five hundred dollars ($2,500).**

§ 30–16–1 (emphasis added). The two clauses in the larceny statute at issue are the over $250 clause and the firearm clause, emphasized above. Whether based on a unit of prosecution analysis, or an elements approach, the two punishments in the present case constitute a violation of double jeopardy. *See Swafford v. State,* 112 N.M. 3, 8–14, 810 P.2d 1223, 1228–34 (1991). The conduct fits within the single larceny and unit of prosecution theories, in that Defendant stole several items from the same owner at the same time and place. *See Baca,* 1997–NMSC–018, ¶ 12, 123 N.M. 124, 934 P.2d 1053. The conduct fits the same elements test, in that the elements of the over $250 clause are subsumed within the firearm clause. *See State v. Clark,* 2000–NMCA–052, ¶ 14, 129 N.M. 194, 3 P.3d 689.

{22} Further, we believe the Legislature intended, by the addition of the firearm clause to the larceny statute, that any firearm theft involving a value of $2500 or less

carry a fourth degree felony penalty. *See State v. Boykin,* 78 N.C.App. 572, 337 S.E.2d 678, 681 (1985) (involving a defendant charged with larceny of a firearm and larceny of goods, and determining the only purpose of the larceny statute was "to establish levels of punishment for larceny based on the value of the goods stolen, the nature of the goods stolen or the method by which stolen, not to create new offenses"); *Acey v. Commonwealth,* 29 Va.App. 240, 511 S.E.2d 429, 432–33 (1999) (determining that larceny statute "did nothing more than make the punishment for larceny of a firearm more severe than that for petit larcenies" and that the "definition of larceny remains unaffected"); *see also State v. Santillanes,* 2001–NMSC–018, ¶ 30, 130 N.M. 464, 27 P.3d 456 (pointing out that Legislature has employed different degrees of felonies to establish the level of punishment for various offenses); *Swafford,* 112 N.M. at 15, 810 P.2d at 1235 ("The quantum of punishment also is probative of legislative intent to punish."); *cf. State v. Roy,* 34 Conn.App. 751, 643 A.2d 289, 298–300 (1994) (holding that defendant could be separately punished for larceny of a firearm where there was a separate statute indicating the legislature's intent to create a separate and additional offense of stealing a firearm), *rev'd on other grounds by* 233 Conn. 211, 658 A.2d 566 (1995).

{23} Had the Legislature intended the firearm clause to be a separately punishable offense, it could have so indicated. Like its amendment of the embezzlement statute "apparently" in response to case law extending the single larceny doctrine to embezzlement cases, the Legislature could have added specific language to the larceny statute clarifying its intent. *Morro,* 1999–NMCA–118, ¶ 9, 127 N.M. 763, 987 P.2d 420 (explaining that the amendment to the embezzlement statute was "apparently" in response to a Supreme Court decision); *see also* NMSA 1978, § 30–16–8 (1995) ("Each separate incident of embezzlement or conversion constitutes a separate and distinct offense.").

{24} The structure of the statute, the absence of legislative guidance, and the clarity of our case law, require the conclusion that this is a single unit of prosecution case, un-

der which the single larceny doctrine is implicated and double jeopardy violated by two punishments for violations of the two clauses of the same larceny statute. The only distinction between the thefts of the firearms and other property by the two men acting in concert was that Defendant acted to take the firearms and co-defendant acted to take the VCR and shoes.

{25} We hold the punishments under both the over $250 clause and the firearm clause of the larceny statute constituted a violation of Defendant's right not to be placed in double jeopardy. Only one conviction can stand, and that conviction should be that based on larceny of a firearm.

## C. Sufficiency of the Evidence to Support the Aggravated Burglary Conviction

{26} Defendant attacks the sufficiency of the evidence to convict him for aggravated burglary, and suggests that only a conviction for simple burglary is warranted. *See* NMSA 1978, § 30–16–3(A) (1971) (burglary of a dwelling place). We must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). "We view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez,* 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

{27} Defendant committed aggravated burglary if he entered the home without authorization with the intent to commit a felony or theft while armed with a deadly weapon. *See* § 30–16–4. The jury was instructed to determine if Defendant "was armed with an instrument or object which when used as a weapon, could cause death or serious injury." *See id.;* NMSA 1978, § 30–1–12(B) (1963); UJI 14–1632 NMRA 2002.

{28} The indictment charged aggravated burglary based on use of a tire iron only. At trial, the State argued Defendant committed the crime because he used a tire iron to

break the window used to enter the home, and also because co-defendant had a knife. On appeal, the State argues these bases for conviction but also argues that Defendant committed the crime because he took firearms.

{29} We will not consider Defendant's possession of the firearm or co-defendant's possession of the knife in relation to whether Defendant committed aggravated burglary, because the firearm possession was neither charged nor argued to the jury, and because the knife circumstance was not charged and no evidence exists that Defendant had any knowledge or reason to know that co-defendant, his accomplice, was armed with a knife. *See State v. Carrasco,* 1997–NMSC–047, ¶ 7, 124 N.M. 64, 946 P.2d 1075 ("[A]n accessory must share the criminal intent of the principal."). Under *Carrasco,* Defendant could not be convicted based on co-defendant's having been armed with a knife unless the State proved actions or conduct on Defendant's part encouraging or approving co-defendant's actions. *See id.* ¶ 9.

{30} The sufficiency argument thus turns on (1) whether an "entry" occurred (2) by the use of the tire iron to break the window. Defendant contends no evidence exists that he brought a tire iron inside the home, and argues it was not enough to convict to show that he had a tire iron immediately before entering or that he used it to break the window. Defendant thus advances a fairly narrow interpretation of "armed with a deadly weapon" in relation to the entry element of the aggravated burglary statute.

{31} Our working definition of "armed" is "easily accessible and readily available for use." *State v. Padilla,* 1996–NMCA–072, ¶ 10, 122 N.M. 92, 920 P.2d 1046 (internal quotation marks omitted). "This definition enhances the policy goal of deterring violence in that it discourages having a deadly weapon available for use during a crime." *Id.* (holding the defendant armed when he stole knife, placed it in a trash can, and carried the trash can away with other stolen items). Co-defendant told the investigator that Defendant took a tire iron from the vehicle and used it to break the window.

There was no evidence of what Defendant then did with the tire iron. Nevertheless, we think a jury could reasonably infer that Defendant left the tire iron outside but near the home or in his car and reasonably conclude the tire iron was easily accessible and readily available for use. A jury is entitled to draw reasonable inferences from circumstantial evidence to reach a conclusion that a defendant committed a crime. *See State v. Barrera,* 2002–NMCA–098, ¶ 13, 132 N.M. 707, 54 P.3d 548 (holding that, in an attack of the evidence as would support a conviction for false imprisonment, defendant's combined restraint of victim and criminal acts of violence permitted a reasonable jury inference that would support the knowledge requirement under false imprisonment statute); *State v. Rojo,* 1999–NMSC–001, ¶ 23, 126 N.M. 438, 971 P.2d 829 (stating that a conviction can be based on circumstantial evidence).

{32} Furthermore, the use of a tire iron to break a window used for entry constitutes "entry" under the statute. *See State v. Tixier,* 89 N.M. 297, 298–99, 551 P.2d 987, 988–89 (Ct.App.1976) (recognizing evidence that unidentified instrument penetrated building by one-half inch was sufficient to sustain conviction); *see also People v. Moore,* 31 Cal. App.4th 489, 37 Cal.Rptr.2d 104, 106 (1994) (holding that use of tire iron to open door constituted entry); *cf. State v. Gregory,* 117 N.M. 104, 105, 869 P.2d 292, 293 (Ct.App. 1993) ("A burglary can be accomplished by an entry through an opening that could not accommodate a human being.").

{33} We reject Defendant's contention that the tire iron was but a burglary tool and that he could be convicted of nothing more than possession of burglary tools under NMSA 1978, § 30–16–5 (1963). While a tire iron may be a burglary tool, Defendant's use of it went beyond mere possession. He used it

for entry and the jury determined it was a deadly weapon. We hold the evidence was sufficient to convict Defendant of aggravated burglary.

### D. Sufficiency of the Evidence to Support Conviction for Larceny Over $250

{34} Because the conviction for larceny over $250 must be vacated on double jeopardy grounds, we need not address the sufficiency of the evidence proving the over $250 amount for that conviction.

## CONCLUSION

{35} The district court did not abuse its discretion by admitting co-defendant's out-of-court statements. Accordingly, we affirm Defendant's convictions for aggravated burglary and conspiracy to commit burglary. However, the conviction of Defendant for violation of two different provisions of the larceny statute and imposing two separate punishments constituted double jeopardy. Therefore, the conviction and sentence for larceny over $250 but not more than $2500 must be vacated, and we remand to the district court with instructions to vacate that conviction and sentence. We affirm the conviction of Defendant for larceny of a firearm.

{36} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and IRA ROBINSON, Judges.