2004-NMCA-097

96 P.3d 1173

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Bertha Montoya GUZMAN, Defendant–Appellant.**

**No. 23,373.**

Court of Appeals of New Mexico.

June 2, 2004.

Certiorari Denied, No. 28,766, Aug. 3, 2004.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, for Appellee.

John B. Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Chief Judge.

{1} Defendant Bertha Montoya Guzman appeals from her conviction of vehicular homicide, accidents involving death or personal injuries, tampering with evidence, and aggravated driving while under the influence of intoxicating liquors. She argues on appeal that the district court erred in denying her

motion to dismiss for the State's failure to comply with Rule 5–604 NMRA 2004 and that the evidence was insufficient to support her convictions. We affirm.

*Procedural History*

{2} The State commenced this prosecution by criminal information. Defendant waived arraignment and entered a plea of not guilty on August 9, 2000, establishing the latest date to commence trial under Rule 5–604(B)(1) as February 9, 2001. Trial was set for January 8, 2001 before Judge Neil P. Mertz, the original judge assigned to this case. On January 2, the State filed a stipulated joint motion for a continuance. The motion stated that the State had failed to provide Defendant with all discovery and witness interviews and that the district attorney's office was not prepared for trial because of a change of administration. Defendant stipulated to the continuance. On January 5, Judge Richard A. Parsons, who was assigned to the case as judge pro tempore after the death of Judge Mertz, granted the motion for continuance without a hearing. On January 19, the court sent notice to counsel setting trial for April 30 and further stating "Counsel to seek extension of time, if necessary."

{3} On February 27, eighteen days after the date for commencement of trial under Rule 5–604, the court entered a nunc pro tunc order opposed by Defendant, stating:

This matter coming on for consideration by the Court upon Petition of the State of New Mexico, by and through Clint Wellborn, Seventh Judicial District Attorney, for an extension of time pursuant to Rule 5–604 NMRA of the District Court Rules, and the Court having considered said petition and being sufficiently advised, The Honorable Richard A. Parsons (Pro Tempore), District Court Judge and trial judge in this cause;

NOW, THEREFORE, IT IS ORDERED that an extension of time is GRANTED to and including May 7, 2001, pursuant to the District Court Rules.

{4} On March 30, Defendant filed a motion to dismiss for failure to timely commence trial. The State responded, arguing that Judge Parsons had orally granted a sixty-day extension on January 5, and that he had subsequently granted an additional thirty-day extension because the April 30 trial date was outside of the sixty-day extension originally granted. The State contended that it had been delayed in sending Judge Parsons a written order on the extension until February 27 "[d]ue to the press of business."

{5} Judge Kevin R. Sweazea held a hearing on the motion to dismiss on April 20. At the hearing, Defendant argued that the rule was not followed, mandating dismissal, because a verified petition was necessary and the judge could not enter an order without a verified petition several days after the date to commence trial had passed. Defendant further argued that the order was not a proper nunc pro tunc order because the acts necessary to support the order had not been performed and the judge did not have the authority to grant the order without the proper procedure being followed. She contended that the State had the obligation to seek an extension and that she did not need to show prejudice, but that she did file her jury instructions, motion in limine, and voir dire, as required by the court. She asserted that the prosecutor had made no attempt to abide by the rule, and therefore, there could be no technical violation of a rule that was not followed in the first place.

{6} The State called Judge Parsons as a witness over Defendant's objection. Judge Parsons testified that he had more than thirty jury trials set starting January 8. He granted the continuance on January 5. During the week of January 16, after the original prosecutor left the district attorney's office, Judge Parsons orally granted a sixty-day extension to the successor prosecutor in an ex parte communication. Although Judge Parsons thought that there was a sixty-day extension, the prosecutor did not prepare an order. When the order was ultimately prepared in the latter part of February, Judge Parsons signed the nunc pro tunc order filed on February 27 knowing that it was opposed. He did not recall granting an additional thirty-day extension, but testified that his intent

was to extend the time to commence trial through May 7.

{7} After Judge Parsons' testimony, Defendant additionally argued that she did not agree to an extension of the time to commence trial. Defendant acknowledged that the State had argued what amounted to good cause to have extended the rule, but contended that the failure to file a verified petition was fatal, even without prejudice to Defendant, because the State had the burden under the rule.

{8} Judge Sweazea denied the motion to dismiss. He found that Judge Parsons acted sua sponte by orally granting the extension in January and memorialized his action in the February 27 order and that Defendant, although objecting to the order, did not file a motion to reconsider or to set aside the order. He concluded that Judge Parsons had the inherent authority to grant an extension for a maximum of ninety days sua sponte by virtue of Rule 5–604(E). Judge Sweazea certified the order for interlocutory appeal. Defendant filed an application for an interlocutory appeal from Judge Sweazea's order. This Court granted and then quashed the application. A jury convicted Defendant of all charges after trial in January 2002.

*Application of Rule 5–604*

■ {9} The purpose of Rule 5–604 is to "assure the prompt trial and disposition of criminal cases." *State v. Flores*, 99 N.M. 44, 46, 653 P.2d 875, 877 (1982); *State v. Eden*, 108 N.M. 737, 741–42, 779 P.2d 114, 118–19 (Ct.App.1989). It is to be applied with common sense and not used to effect technical dismissals. *Id.* The operation of the rule is not jurisdictional. *See State v. Vigil*, 85 N.M. 328, 332, 512 P.2d 88, 92 (Ct.App.1973). By analogy to civil cases, it is not designed to allow a defendant to "sleep upon" rights under the rule while the state continues "prosecution of a case which is subject to being dismissed upon motion." *Id.* at 332, 512 P.2d at 92. A defendant must file a motion to dismiss to trigger a dismissal. *Id.*

■ {10} Although Judge Sweazea may not have denied the motion to dismiss specifically based on Defendant's failure to

act in filing the motion to dismiss, he found that Defendant did not move to reconsider or set aside the February 27 order. The timeliness of Defendant's actions was part of the record before Judge Sweazea. Therefore, to the extent Judge Sweazea did not base his ruling on Defendant's actions in the case, it would not be unfair to Defendant to rely on that ground even though it was not relied on by Judge Sweazea. *See State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App. 1994) (stating that the district court's ruling may be affirmed on basis not relied upon by the district court as long as the new basis is not unfair to appellant). We review Judge Sweazea's decision under the de novo standard of review. *See State v. Wilson*, 1998–NMCA–084, ¶ 8, 125 N.M. 390, 962 P.2d 636 ("We review the district court's application of Rule 5–604 de novo.").

■ {11} The verified petition required by Rule 5–604 ensures that the judge has the information necessary to determine if an extension is proper. Although the State did not follow the rule by filing a verified petition, when we consider Defendant's actions in their entirety, we do not believe that dismissal comports with the purpose of Rule 5–604. Trial was set with thirty-one days remaining to commence trial. Defendant stipulated to a continuance. Judge Parsons informed the prosecutor that he intended to grant an extension, but the rule date passed without an order because the prosecutor did not take appropriate action. Defendant did not have any responsibility until that point; she did not have any obligation to "bring on [her] trial." *State v. Mascarenas*, 84 N.M. 153, 155, 500 P.2d 438, 440 (Ct.App.1972) (internal quotation marks and citation omitted). When the rule date passed, trial was set in eighty days. To obtain a dismissal, Defendant then had the responsibility to file a motion to dismiss rather than "sleep upon" her rights. *Vigil*, 85 N.M. at 332, 512 P.2d at 92 (internal quotation marks and citation omitted). Defendant did not take action, but the prosecutor and the judge did. Even though the prosecutor did not act properly under the rule by filing a verified petition for an extension, eighteen days after the rule date, the judge entered an order extending the time for trial. After the order, Defen-

dant waited another thirty-one days before filing a motion to dismiss.

{12} Giving consideration to the purpose of Rule 5–604 to assure a prompt trial and the way Rule 5–604 is to be applied, we do not agree with Defendant that Judge Sweazea misapplied the rule. Although Defendant did not agree to an extension under the rule, she stipulated to a joint motion for continuance which, as she concedes, set forth good cause for an extension. When the time came for her to take action to assert her rights under the rule, she did not do so. She did not even act within a reasonable time after the prosecutor and the judge took action to correct the oversight that resulted in the passing of the rule date.

■ {13} Although Defendant had the right to a prompt trial under Rule 5–604, Defendant's actions do not indicate that she believed her rights under the rule to be significant. She did not act promptly to protect them. We agree with Defendant that the State has the obligation to conduct the prosecution of its case in a timely manner. *See State v. Sanchez*, 2000–NMCA–061, ¶ 9, 129 N.M. 301, 6 P.3d 503. However, a defendant may waive the requirements of the rule. *See State v. Sanchez*, 109 N.M. 313, 316, 785 P.2d 224, 227 (1989) (stating that the defendant and his attorney's actions in signing a plea agreement after the rule date had passed indicated an implicit agreement to suspend the rule such that prudence and common sense would not require an extension); *State v. Eskridge*, 1997–NMCA–106, ¶¶ 10, 12, 124 N.M. 227, 947 P.2d 502 (affirming denial of the defendant's motion to dismiss because the defendant had waived his rights under the rule). Given Defendant's actions, dismissal of this case would be a technical application of the rule. It is contrary to our common sense to apply the rule to dismiss this case because there was not a prompt trial when we consider the way Defendant herself treated her right to a prompt trial. *Cf. State v. Jaramillo*, 2004–NMCA–041, ¶ 15, 135 N.M. 322, 88 P.3d 264 (N.M.Ct. App. 2004) (declining to ignore the defendant's failure to move for dismissal when such action indicated the defendant intended to benefit from, and was not unduly delayed

by, delay in bringing case to trial). Defendant waived her rights under Rule 5–604 by her actions.

*Sufficiency of the Evidence*

{14} Defendant argues that the evidence was insufficient to support her convictions for vehicular homicide, accidents involving death or personal injuries, and tampering with evidence. The State presented evidence at trial that Defendant consumed six to eight beers before leaving the Golden Spur tavern and heading home on Elm Street at approximately 2:00 a.m. The victim left the Golden Spur minutes before Defendant, carrying a twelve pack of Budweiser beer. Defendant admitted that she hit something as she drove home and that she stopped and made a U-turn in order to investigate but did not see anything. Upon arriving home, Defendant told Johnny Simmons, her boyfriend, that she had hit something. Simmons, a part-time deputy sheriff, was also intoxicated. Defendant and Simmons went outside and discovered part of a twelve pack of Budweiser beer lodged in the damaged grille of Defendant's truck. Simmons left, stating that he would investigate and return. Defendant went to sleep. Simmons located the victim's body near the intersection of Elm and Third Streets and informed the police. The police also found dark green vehicle parts and scattered beer cans near the victim's body. The victim was wearing dark clothing and had a blood alcohol content of .319 at the time of his death.

{15} The next morning, at approximately 5:45 a.m., two state police officers went to Defendant's house. The officer who testified observed that Defendant's green pickup truck had damage to its front right side and windshield. Defendant told the officer that she had not consumed any alcoholic drinks after the accident. The officer took Defendant to the hospital where her blood was drawn and tested, showing a blood alcohol level of .13.

{16} We review the evidence in the light most favorable to supporting the district court's verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict. *State v. Alvarez–Lopez*, 2003–NMCA–039, ¶ 26, 133 N.M. 404, 62 P.3d

1286. We do not reweigh the evidence or determine the credibility of witnesses. *See In re Ernesto M., Jr.*, 1996–NMCA–039, ¶ 15, 121 N.M. 562, 915 P.2d 318. Instead, a "conviction stands if there is evidence of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to the conviction." *State v. Curry*, 2002–NMCA–092, ¶ 13, 132 N.M. 602 52 P.3d 974.

{17} In order to convict Defendant of vehicular homicide, the State had to prove: (1) Defendant operated a motor vehicle; (2) while under the influence of intoxicating liquor; (3) causing the death of the victim. UJI 14–240 NMRA 2004. The jury was instructed:

> A person is under the influence of intoxicating liquor when as a result of drinking such liquor the person is less able, to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public.

UJI 14–243 NMRA 2004. The jury was additionally instructed that the State had to prove that:

> The act of the defendant was a significant cause of the death of [the victim]. The defendant's act was a significant cause of death if it was an act which, in a natural and continuous chain of events, uninterrupted by an outside event, resulted in the death and without which the death would not have occurred.

UJI 14–251 NMRA 2004.

{18} Defendant contends that there was no "[e]vidence of a causal link" between Defendant's driving while intoxicated and the victim's death. *See State v. Munoz*, 1998–NMSC–041, ¶ 23, 126 N.M. 371, 970 P.2d 143. She points out that the State's accident reconstruction expert assigned the cause of the accident to "pedestrian error" and that the expert agreed with Defendant that she was operating her vehicle in a safe manner. Defendant further suggests that she "could only reasonably be expected to evade a pedestrian who was visible to her; [the victim's] dark clothing and doubtlessly erratic movements would have precluded this."

{19} Even though the victim was wearing dark clothing and was intoxicated when hit, as Defendant argues, a jury could reasonably find that there was a significant causal link between Defendant's intoxicated driving and the victim's death. *See id.* An autopsy revealed that the victim was struck by a vehicle, suffered a skull fracture, and died of blunt force head injuries. There was no indication at the scene that Defendant took any evasive action prior to hitting the victim. A toxicologist testifying for the State testified that once a blood alcohol level exceeds .10, the individual's field of vision narrows "significantly" and reaction time is slowed. This evidence allows the reasonable conclusion that if Defendant had not been driving intoxicated, she could have avoided hitting the victim. *See id.* ¶ 22 (observing that when the State presents evidence that had the defendant not been driving intoxicated, she could have "applied [her] brakes or otherwise been able to avoid ramming the victim[ ]", and therefore it was proper to hold the defendant criminally responsible for the consequences of her unlawful behavior). There was substantial evidence to support the conviction.

{20} There was also substantial evidence to support Defendant's conviction for accidents involving death or personal injuries. In order to convict Defendant of accidents involving death or personal injuries, the State was required to prove that Defendant (1) operated a motor vehicle; (2) was involved in an accident which caused great bodily harm or death of the victim; (3) failed to stop and/or failed to remain at the scene of the accident; and (4) failed to render reasonable aid to the victim. NMSA 1978, § 66–7–201 (1989); NMSA 1978, § 66–7–203 (1978). Defendant, while driving her truck, collided with the victim and admitted that she thought he could have been a person on a bicycle. She went home after making a U-turn to investigate. Defendant argues that it was reasonable for her to leave the scene upon not seeing the victim and to report the accident to her intoxicated boyfriend, an off-duty deputy, who then went to investigate.

However, viewing the evidence in the light most favorable to the verdict, we cannot say that the jury could not have concluded otherwise. *See State v. Clifford,* 117 N.M. 508, 512, 873 P.2d 254, 258 (1994) (stating that we will not "reweigh the evidence nor substitute our judgment for that of the jury").

{21} Defendant similarly argues that there was insufficient evidence to support her conviction for tampering with evidence. Defendant argues that the State failed to prove, as required by NMSA 1978, § 30–22–5 (1963), that the tampering was done with "intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another." The State's theory, as reflected in the jury instructions, was that Defendant placed "parts and pieces from her [truck] in a bag and placed the bag in her home and/or aided or abetted … Simmons in removing and/or hiding a package of beer that was lodged in the grille of her [truck]" with the intent "to prevent the apprehension, prosecution or conviction of herself."

{22} Generally, intent is established by circumstantial evidence. *See State v. Gallegos,* 109 N.M. 55, 66, 781 P.2d 783, 794 (Ct.App.1989) (stating that intent is usually inferred from the facts of the case, rather than direct evidence); *State v. Gattis,* 105 N.M. 194, 200, 730 P.2d 497, 503 (Ct.App. 1986) (stating that intent can be inferred from an accused's acts, conduct, and words). Agent Blakeney, one of the investigating agents, testified that he found a partial twelve pack of Budweiser and motor vehicle parts in a bag in Defendant's home. Defendant told Blakeney that Simmons had removed the beer cans from the grille of her truck. Simmons denied removing the beer cans from Defendant's grille even though his fingerprints were found on one of the cans and on the bumper of Defendant's vehicle. From this evidence, the jury could reasonably conclude that Defendant placed the articles in her home or assisted Simmons in doing so with the requisite intent. We will not reweigh the evidence. *See State v. Rojo,* 1999–NMSC–001, ¶ 26, 126 N.M. 438, 971 P.2d 829 (stating that jury could infer intent to tamper with evidence from physical and circumstantial evidence presented at trial). There is sufficient evidence to support each element required to sustain Defendant's conviction for tampering with evidence.

{23} Finally, while mentioning that she contested the sufficiency of the evidence for the aggravated driving while intoxicated conviction, Defendant failed to make the argument in her brief in chief. Therefore, the issue is deemed abandoned. *See State v. Ciarlotta,* 110 N.M. 197, 201, 793 P.2d 1350, 1354 (Ct.App.1990) (stating that issues not argued in the brief in chief are deemed abandoned).

*Conclusion*

{24} We hold that the district court did not err in denying Defendant's motion to dismiss for the State's failure to comply with Rule 5–604 and that the evidence was sufficient to support her convictions. Accordingly, we affirm the district court's judgment and sentence.

{25} IT IS SO ORDERED.

CASTILLO and ROBINSON, JJ., concur.